In re the Paternity of Nicholas B. Palmersheim:
Leanne M. Abbas, Petitioner-Respondent,

v.

Bradley J. Palmersheim, Respondent-Appellant.†

Court of Appeals

*Nos. 02–3390, 03–1267. Submitted on briefs October 14, 2003.—
Decided June 3, 2004.*

2004 WI App 126

(Also reported in 685 N.W.2d 546.)

† Petition to review granted 9-16-04.

314

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Dale M. Eaton* and *Mary M. Prohaska* of *Eaton & Prohaska, LLP*, Wausau.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Charles J. Lee* of Red Wing, Minnesota.

Before Deininger, P.J., Lundsten and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Bradley M. Palmersheim appeals a circuit court order denying his motion for modification of custody and physical placement of Palmersheim's minor son. The circuit court found Palmersheim failed to establish a significant change in circumstances from the previous custody and physical

placement order and also found Palmersheim failed to rebut the presumption that the current custody and physical placement arrangement was in the child's best interest under WIS. STAT. § 767.325(1)(b) (2001–02).[1] Because the record does not support the circuit court's finding of no significant change in circumstances, we conclude the circuit court erred. However, because the circuit court proceeded to the second step in the analysis, that is, whether Palmersheim established that his proposed changes in custody and placement were in the child's best interest, we also conclude the circuit court's error was harmless. We further conclude that the circuit court applied the correct legal standard in determining the best interest of the child and that Palmersheim's equal protection rights were not violated. We therefore affirm the circuit court's order.

## BACKGROUND

¶ 2. Palmersheim and Leanne M. Abbas are the parents of Nicholas, born October 6, 1991. A stipulated paternity judgment was entered on February 17, 1992, awarding sole legal custody to Abbas and periods of physical placement with Palmersheim "as agreed between the parties." At the time of this paternity judgment, WIS. STAT. § 767.51(3) (1991–1992) provided, in relevant part, "Unless the court orders otherwise, ... the mother shall have sole legal custody of the child."

¶ 3. In August 2001, Palmersheim filed a motion to modify the original paternity judgment, seeking joint custody and shared physical placement. A hearing was held on this motion on June 10, 2002. Both Palmersheim and Abbas testified, as did Teri Phalin, a certified

---

[1] All references to the Wisconsin Statutes will be to the 2001–02 version unless otherwise noted.

social worker who had completed a home study at the request of the guardian ad litem. Phalin testified, and her report states, the child is well adjusted, is doing well in school and is participating in both sports and an accelerated learning program. Phalin recommended joint custody, as did the guardian ad litem.

¶ 4. The circuit court, applying WIS. STAT. § 767.325(1)(b), denied Palmersheim's motion, finding that (1) Palmersheim failed to establish a substantial change in circumstances substantially affecting legal custody and physical placement since the entry of the previous order, and (2) Palmersheim failed to rebut the presumption that the current allocation of decision making under the legal custody order and the continuation of the child's primary physical placement with Abbas are in the best interest of the child.

¶ 5. On December 17, 2002, Palmersheim moved for reconsideration of the circuit court's December 4, 2002 order, claiming his constitutional right to equal protection was violated by application of the WIS. STAT. § 767.325(1)(b)2 presumptions. The circuit court denied his motion stating it is not unfair to presume to continue the status quo after eleven years have passed since the original custody and placement order and Palmersheim should not be permitted to interject a constitutional argument not presented at the motion hearing six months earlier. Palmersheim appeals.

## DISCUSSION

*Substantial Change in Circumstances*

¶ 6. Whether to modify a custody or physical placement order is directed to the circuit court's sound discretion. *Keller v. Keller*, 2002 WI App 161, ¶ 6, 256

Wis. 2d 401, 647 N.W.2d 426. We affirm a circuit court's discretionary determination when the circuit court applies the correct legal standard to the facts of record and reaches a reasonable result. *Id.* Our task as a reviewing court is to search the record for reasons to sustain the circuit court's exercise of discretion. *Id.* However, when a party argues that the circuit court erroneously exercised its discretion by applying an incorrect legal standard, we independently review that issue of law. *Id.*

¶ 7. WISCONSIN STAT. § 767.325(1)(b)2 provides that, after two years, a circuit court may substantially modify custody or physical placement if the modification is in the child's best interest and there has been a substantial change in circumstances since the entry of the last custody and placement order. Section § 767.325(1)(b)2 establishes a rebuttable presumption that

 a. Continuing the current allocation of decision making under a legal custody order is in the best interest of the child.

 b. Continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child.

¶ 8. Whether there is a substantial change in circumstances is a mixed question of law and fact. *See Harris v. Harris,* 141 Wis. 2d 569, 574, 415 N.W.2d 586 (Ct. App. 1987). The circuit court's findings of fact regarding an alleged change of circumstance since the last custody and placement order will not be disturbed unless clearly erroneous. *Rosplock v. Rosplock,* 217 Wis.

2d 22, 33, 577 N.W.2d 32 (Ct. App. 1998). However, whether a substantial change in circumstances has occurred is a question of law. *Keller*, 256 Wis. 2d 401, ¶ 7. Because the circuit court's legal determination is mixed with its factual findings, we give weight to the circuit court's decision. *Rosplock*, 217 Wis. 2d at 33 (citation omitted).

¶ 9. Palmersheim argues that the circuit court erred by determining there was not a substantial change in circumstances since the entry of the last order affecting legal custody or physical placement. A substantial change of circumstances requires that the facts on which the prior order was based differ from the present facts and the difference is sufficient to justify the circuit court's consideration of modification. *Keller*, 256 Wis. 2d 401, ¶ 7. We are not bound by a circuit court's determination of whether there was a significant change in circumstances. *Id.*

¶ 10. We conclude the evidence of record does not support the circuit court's finding of no substantial change in circumstances since the entry of the last order affecting legal custody or physical placement. Apparently the circuit court focused on events that occurred in the years just prior to the hearing in this matter, which, standing alone, do not show a substantial change in circumstances. However, when the entire relevant time period is considered, the facts clearly show a significant change in circumstances.

¶ 11. At the time of the last custody and placement order (the 1992 paternity judgment and order), Nicholas was four months old. Palmersheim and Abbas resided in the home of Palmersheim's parents in Wisconsin Rapids, Wisconsin. Palmersheim was a student

at the University of Wisconsin-Stevens Point and Abbas was unemployed, receiving government assistance in the form of financial aid, food stamps and Medical Assistance. Palmersheim was able to be with his son every day and be a full-time parent.

¶ 12. Approximately six to eight months after the custody and placement order was issued, Abbas and Palmersheim broke up and Abbas moved to an apartment in Plover, Wisconsin, with Nicholas. Because of the custody and placement order, Abbas had sole legal custody and primary physical placement with periods of physical placement to Palmersheim as agreed between the parties. Palmersheim had irregular contact with Nicholas during the next several years. Beginning around 1994, Palmersheim had physical placement of Nicholas approximately every other weekend with perhaps one additional night during the week. Palmersheim also had extended periods of visitation during the summer months.

¶ 13. Today, Palmersheim and Abbas reside in different communities approximately forty-five minutes apart, have successful careers and are in committed relationships with other persons. Nicholas is now twelve years old, well adjusted and successful in school. Palmersheim, at the time of the motion hearing in this case, had physical placement of Nicholas every other weekend from Friday until Monday mornings and overnight every Thursday. The parties alternated placement on holidays.

¶ 14. The facts upon which the prior order was based are substantially different from the present facts and this difference is sufficient to justify modification of the previous order. This is particularly true with respect to the amount of time Palmersheim has with Nicholas. At the time of the original custody and placement order, Nicholas lived with both parents.

Palmersheim saw Nicholas every day. At the time of the hearing in this case Palmersheim saw Nicholas only every other weekend and every Thursday night. This change is substantial and material. We conclude the circuit court erred by finding Palmersheim had not established a significant change in circumstances.

¶ 15. However, we also conclude the circuit court's error is harmless. Despite its conclusion of no significant change in circumstances, the circuit court proceeded to analyze the evidence under WIS. STAT. § 767.325(1)(b)2 to determine whether Palmersheim's proposed changes in custody and placement were in Nicholas's best interest. On appeal, Palmersheim asserts the circuit court used an erroneous legal standard when determining the best interest of the child. Palmersheim raises no objections to the circuit court's factual findings.[2] We conclude the circuit court applied the correct legal standard and we affirm.

*Best Interest of the Child*

¶ 16. We now determine whether the circuit court applied the correct legal standard in determining

---

[2] Palmersheim argues tangentially that the circuit court erroneously exercised its discretion by not awarding him equal placement, claiming WIS. STAT. § 767.24(4) requires the court to maximize his physical placement time with his son. The heart of this case centers on whether the circuit court applied the proper legal standard in determining what was in Nicholas's best interest. Palmersheim pays scant attention to the physical placement aspect of the case; thus, our inquiry focuses on whether the circuit court erred in its application of the law to the facts of this case. In any event, the circuit court generally addressed the factors in WIS. STAT. § 767.24(5) in determining whether a change in custody and physical placement was in Nicholas's best interest. We will not disturb the circuit court's findings of fact unless the record clearly does not support them.

323

whether the proposed changes in custody and placement were in Nicholas's best interest. Palmersheim argues the circuit court erred by applying the status quo presumption as provided by WIS. STAT. § 767.325(1)(b)2 rather than the joint legal custody presumption as required by WIS. STAT. § 767.24(2)(am).[3] Palmersheim asserts WIS. STAT. § 767.325(5m),[4] which requires the circuit court to consider whether the proposed modification of custody and placement is in the child's best interest "in a manner consistent" with § 767.24, obligates the court to presume that joint legal custody is in the child's best interest. Section 767.24 is the statute governing initial determinations of legal custody and physical placement. In essence, Palmersheim argues, the status quo presumption does not apply in modification proceedings. He claims that the joint legal custody presumption is the "new" rebuttable presumption applicable in all cases, including custody and placement modification proceedings.[5] We disagree.

[3] WISCONSIN STAT. § 767.24(2)(am) reads, "The court shall presume that joint legal custody is in the best interest of the child."

[4] WISCONSIN STAT. § 767.325(5m) provides, "In all actions to modify legal custody or physical placement orders, the court shall consider the factors under s. 767.24(5) and shall make its determination in a manner consistent with s. 767.24."

[5] We deal here with the provision governing modification motions after two years. The logical extension of Palmersheim's argument is that the joint custody presumption also trumps WIS. STAT. § 767.325(1)(a). That subsection plainly intends to foster stability for children by setting a very high bar for custody changes within two years of the original order. The moving party must, with some exceptions, show "by substantial evidence that the modification is necessary because the current custodial conditions are physically or emotionally harmful to the best interest of the child . . . ." *Id.* This status quo presump-

¶ 17. The question before us is one of statutory interpretation, which we decide de novo. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997). Our primary objective in statutory interpretation is to discern the intent of the legislature. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997). To ascertain legislative intent, we first look to the statute's plain language. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997).

¶ 18. This case requires us to construe the statutory construction of two related statutes. The entire section of a statute and related sections are to be considered in its construction or interpretation; we do not read statutes out of context. *Kerkvliet v. Kerkvliet*, 166 Wis. 2d 930, 939, 480 N.W.2d 823 (Ct. App. 1992). In determining the meaning of any single phrase or word in a statute, it is necessary to look at it in light of the whole statute and related sections. *Id.* Statutes relating to the same subject matter are to be construed together and harmonized. *Id.* We are to interpret statutes so as to effectuate the purpose of the whole act; a construction which will defeat the manifest object of the act is disfavored. *Id.* at 940.

¶ 19. Standing alone, neither Wis. Stat. § 767.24(2)(am) nor Wis. Stat. § 767.325(1)(b) is ambiguous. However, these statutes are ambiguous in their interaction. There is an inherent conflict between

tion is much stronger than the one at issue here and, under Palmersheim's approach, even more "inconsistent" with Wis. Stat. § 767.24.

325

these statutes when applied to custody and physical placement modification petitions or motions. Which presumption applies under a particular circumstance is tricky business, especially in the case where neither party is successful in rebutting either presumption.

¶ 20. Before WIS. STAT. § 767.325(5m) was created, WIS. STAT. § 767.24 applied only to initial determinations of legal custody and physical placement and § 767.325 applied only to custody and placement modification proceedings. *See Kerkvliet*, 166 Wis. 2d at 941, 943–44. No ambiguity existed. However, ambiguity now exists by the creation of § 767.325(5m), which requires courts to construe § 767.325 "in a manner consistent with s. 767.24." This language could be construed as requiring courts to incorporate all aspects of § 767.24 by reference into § 767.325 in determining custody and placement modification motions. Another reasonable interpretation of this phrase is that courts are required to consider those aspects of § 767.24 plainly applicable to modification proceedings, such as § 767.24(5), which provides the factors courts must consider in determining custody and placement at both initial **and** modification proceedings. Moreover, the language of WIS. STAT. § 767.24(2)(am) does not support applying this section to modification proceedings. To further complicate matters, the legislature did not explicitly repeal WIS. STAT. § 767.325(1)(b), thereby creating the possibility that two rebuttable, but diametrically opposed, presumptions are to be applied in custody and placement modification determinations.

¶ 21. Palmersheim argues "in a manner consistent with s. 767.24" means the presumption of joint legal custody as stated in WIS. STAT. § 767.24(2)(am) must be applied in all custody modification proceedings. Abbas argues that the legislature's decision not to repeal the status quo presumption in WIS. STAT.

§ 767.325(1)(b)2 shows the legislature did not intend to require courts to presume that joint legal custody was in the child's best interest in modification proceedings. What the legislature intended by this change is not so clear.

¶ 22. There is no dispute that the legislature, by enacting Wis. Stat. § 767.24(2)(am), intended to create a rebuttable presumption in favor of joint legal custody applicable in all initial custody proceedings. What is not clear is whether the legislature intended this presumption to apply in custody modification determinations. Moreover, were we to conclude that the legislature intended to apply the presumption of joint legal custody to custody modification actions, it is clear that the legislature failed to achieve its objective.

¶ 23. Because the legislature failed to specifically repeal the status quo presumption, we must construe the statutes in a manner so as to resolve the ambiguities. We bear in mind that where statutes relate to the same subject matter, they should be read together and harmonized if possible. *Kerkvliet*, 166 Wis. 2d at 939. To harmonize the two statutes, we must read them together in a way that gives each full force and effect. *City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 184, 532 N.W.2d 690 (1995).

¶ 24. We conclude that the most reasonable interpretation of Wis. Stat. § 767.24(2)(am) is that the presumption that joint legal custody is in the child's best interest applies only in initial legal custody determinations, not in modification determinations.[6] Were we to conclude that the § 767.24(2)(am) presumption

---

[6] The legislature is delegated the task of promulgating laws and, in the process, must do so in a rational and logical manner

favoring joint legal custody applied to a WIS. STAT. § 767.325(1)(b) motion for modification of custody and physical placement, such a conclusion would, in essence, eliminate the § 767.325(1)(b) presumption favoring the status quo. We will not interpret a statute in a way that results in the judicial nullification of a statute. *See Phillips v. Wisconsin Pers. Comm'n*, 167 Wis. 2d 205, 217, 482 N.W.2d 121 (Ct. App. 1992). Furthermore, this interpretation would abrogate the clear legislative preference for continuity in custody and placement. The legislature raised the bar for parties wishing to upset the status quo by enacting § 767.325(1)(b) because changes in custody and physical placement can be hard on children and change is not desirable unless supported by good reason. We conclude the legislature did not intend to eliminate the preference for continuity in custody and placement as codified in § 767.325(1)(b) by enacting § 767.24(2)(am) and WIS. STAT. § 767.325(5m).

¶ 25. In addition, the modification statute is inconsistent with a presumption favoring joint legal custody since it favors continuing the status quo regardless of whether the initial order awarded joint legal custody. Under Palmersheim's view, the status quo presumption would only apply when joint legal custody is the status quo. Moreover, even if the legislature intended to eliminate the presumption of maintaining the status quo in

---

so as to avoid absurd results. The legislature neglected this task by creating a new presumption without explicitly eliminating or repealing the old one. Palmersheim strains to reconcile these conflicting presumptions by suggesting that the presumption of joint legal custody rebuts the presumption of maintaining the status quo. We cannot find any reference in the legislative history to suggest the legislature intended to maintain two statutory presumptions, with the joint legal custody presumption rebutting the status quo presumption.

modification actions, the legislature failed to clearly signal its intentions by not specifically repealing WIS. STAT. § 767.325(1)(b).

■■■■

¶ 26. Furthermore, it is presumed that the legislature acts with knowledge of existing statutes when enacting legislation. *H.F. v. T.F.,* 168 Wis. 2d 62, 69 n.5, 483 N.W.2d 803 (1992). We must presume the legislature did not intend to create a conflict between these two statutes. *Id.* at 69–70 n.5. Thus, it is reasonable for us to assume that when the legislature enacted WIS. STAT. § 767.325(5m) requiring the circuit court, in all custody and placement modification actions, to make its determination "in a manner consistent" with WIS. STAT. § 767.24, the legislature was aware of the more specific status quo presumption required by WIS. STAT. § 767.325(1)(b).

¶ 27. Finally, because WIS. STAT. § 767.325(5m) is general and, as it relates to this topic, at best, ambiguous, and WIS. STAT. § 767.325(1)(b)2 is specific and clear with respect to the presumption to be applied in custody and placement modification proceedings, the specific language trumps the general language. *See Brown County v. State Pub. Defender,* 167 Wis. 2d 168, 174, 482 N.W.2d 665 (Ct. App. 1992). If a sufficient number of legislators had reached agreement that the status quo presumption should not apply when an existing custody order is for sole custody, then surely the legislature would have chosen a means less obscure than § 767.325(5m) to achieve that result. The most reasonable interpretation of the legislature's failure to specifically repeal the status quo presumption contained in § 767.325(1)(b)2 is that the legislature intended for the status quo presumption to survive its sweeping changes of the law.

¶ 28. The dissent's interpretation of the statutes is unworkable because it fails to provide direction to circuit courts in deciding close cases, the very cases in which a presumption is most important. The dissent's suggestion is unworkable precisely because it directs that conflicting presumptions be applied simultaneously. The dissent suggests that in close cases the circuit court's final task is to "assess the strength of the competing legislative directives on the record before it, and ultimately, to determine which should receive the greater weight in the case at hand." Dissent at ¶ 60. But this is no guidance at all. How does a circuit court "assess the strength of the competing legislative directives" in a close case? The result of adopting the dissent's approach is predictable: judges who, in general, favor sole custody will likely give that presumption greater weight. Judges with no personal preference will be left adrift with no guidance as to which presumption should be given "greater weight." Certainly the legislature did not intend this.

*Equal Protection*

¶ 29. Palmersheim next argues that if the status quo presumption of WIS. STAT. § 767.325(1)(b) cannot be rebutted by the joint custody presumption in WIS. STAT. § 767.24(2)(am), then application of the status quo presumption in § 767.325(1)(b) deprives him of his constitutional right to equal protection under the law. He argues that because the right to raise one's child is a fundamental right, there must be a compelling state interest in maintaining a presumption that the status quo is in a child's best interest in custody and placement modification proceedings where the initial custody and placement determinations were made prior to the 1999 legislative changes. Palmersheim claims that he and

other similarly situated parents who were subject to the presumption of sole legal custody prior to the 1999 legislative changes are being deprived the benefit of the presumption that joint legal custody is in the child's best interest in modification proceedings by operation of § 767.325(1)(b)2. He points out that this presumption is fair for those parents seeking modification after the 1999 legislation was enacted but parents who seek to modify custody and placement where their last custody and placement orders occurred prior to 1999 will never enjoy a presumption of joint custody and maximized physical placement.

¶ 30. We review a constitutional challenge to a statute de novo. *Bethke v. Lauderdale of La Crosse, Inc.*, 2000 WI App 107, ¶ 15, 235 Wis. 2d 103, 612 N.W.2d 332. We give no deference to the circuit court's determination in this matter. *Griffin v. Milwaukee Transp. Servs., Inc.*, 2001 WI App 125, ¶ 4, 246 Wis. 2d 433, 630 N.W.2d 536. A statute enjoys a presumption of constitutionality and a party challenging a statute must establish its unconstitutionality beyond a reasonable doubt. *Sambs v. City of Brookfield*, 97 Wis. 2d 356, 370, 293 N.W.2d 504 (1980).

¶ 31. A party seeking to challenge the constitutionality of a statute on equal protection grounds must demonstrate that the statute treats similarly situated persons differently. *Aicher v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶ 56, 237 Wis. 2d 99, 613 N.W.2d 849. We apply a strict scrutiny analysis where the statute impinges upon a fundamental right or creates a classification that disadvantages a suspect class. *Id.*

¶ 32. We conclude that applying WIS. STAT. § 767.325(1)(b)2 to the facts of this case implicates a fundamental right. We recognize that parents have a fundamental right to the care and custody of their children. *See Barstad v. Frazier,* 118 Wis. 2d 549, 556–57, 348 N.W.2d 479 (1984). We further conclude, however, that the state's interest in protecting the best interest of a child by imposing a rebuttable presumption of maintaining the status quo in custody and physical placement modification proceedings is compelling and that § 767.325(1)(b)2 is narrowly tailored to achieve that purpose.

¶ 33. First, because we have concluded that the legislature failed to create a presumption that joint legal custody applies in custody and placement modification proceedings, all parties seeking modification of custody and placement orders, regardless of the date the last order was entered, are treated the same; the presumption that the status quo is in the child's best interest will be applied.

¶ 34. Second, the legislative decision to leave in place the presumption of continued custody and placement reveals its belief that it is inherently harmful to change a child's situation absent some change in circumstances that makes the status quo no longer in the child's best interest. Third, parents such as Palmersheim will not in all instances be treated differently than post-1999 legislation parents. The status quo presumption applies even for parents where the court makes an initial custody and placement determination after the 1999 reform legislation went into effect. WISCONSIN STAT. § 767.24(2) provides certain circumstances under which a circuit court may order sole

custody to a parent. Thus, a parent seeking modification of that order will be similarly affected as a pre-1999 legislation parent who carries the burden of demonstrating that it is in his or her child's best interest to modify custody or placement. In essence, continuity in custody and placement circumstances is beneficial for children, which constitutes a compelling state interest, even where the mother originally acquired custody due to the sole legal custody presumption. We conclude the circuit court applied the correct legal standard by applying WIS. STAT. § 767.325(1)(b) to the facts of this case.

## CONCLUSION

¶ 35. While we agree with Palmersheim that there was a substantial change in circumstances, we conclude that the circuit court applied the correct standard of law under WIS. STAT. § 767.325(1)(b)2, a presumption that maintaining the current custody and physical placement schedule is in the child's best interest. We also conclude Palmersheim's equal protection rights have not been violated by operation of § 767.325(1)(b)2. We therefore affirm the order denying Palmersheim's request for modification of custody and physical placement.

*By the Court.*—Order affirmed.

¶ 36. LUNDSTEN, J. (*concurring*). I agree with much of the lead opinion. I join the conclusions that there was a substantial change in circumstances in this case and that there is no equal protection violation. Regarding the construction of the status quo language found in WIS. STAT. § 767.325(1)(b)2, I join the conclusion that the status quo presumption that applies to

custody modification requests is unaffected by the creation of § 767.325(5m). I write separately, however, because I differ in how I reach that conclusion. Unlike the lead opinion, I conclude that the statutes are unambiguous.

¶ 37. The asserted conflict between the different custody presumptions arises in cases where a prior order gives sole custody to one parent and, later, the other parent requests modification of the order to joint custody. Here, the mother has had sole custody since 1992 and the father, Palmersheim, seeks modification to joint custody. Palmersheim argues that the joint custody presumption in WIS. STAT. § 767.24(2)(am) trumps the status quo presumption in WIS. STAT. § 767.325(1)(b)2 because § 767.325(5m) states that modifications to custody and placement orders "shall" be made in a "manner consistent with" § 767.24, and § 767.24 contains the joint custody presumption.

¶ 38. My review of the legislative history leads me to conclude that there is nothing in that history that reliably demonstrates whether the many legislators who voted for the changes encompassed in 1999 Wis. Act 9 intended that one of those changes be that the status quo presumption applicable to modification proceedings take a back seat to the joint custody presumption. In any event, we need not engage in an effort to discern the subjective intent of legislators because the statutes at issue are unambiguous.

¶ 39. The joint custody presumption applies to initial custody decisions. Typically, at the time of an initial custody decision, change for the children is unavoidable. At this initial stage, the legislature has provided that courts "shall presume that joint legal custody is in the best interest of the child." WIS. STAT. § 767.24(2)(am). Obviously, the legislature has deter-

mined that, in the aftermath of a parting of the ways of parents, children benefit from the active involvement of both parents. No ambiguity here.

¶ 40. Just as plainly, the legislature recognizes that children benefit from continuity. Thus, under WIS. STAT. § 767.325(1)(b), the modification of a custody order must be "in the best interest of the child" and "there is a rebuttable presumption that . . . [c]ontinuing the current allocation of decision making under a legal custody order is in the best interest of the child." No ambiguity here either.

¶ 41. Palmersheim argues, and the lead opinion agrees, that WIS. STAT. § 767.325(5m) introduces ambiguity. I disagree. Section 767.325(5m) reads, in pertinent part: "In all actions to modify legal custody . . . the court . . . shall make its determination in a manner consistent with s. 767.24." There is, however, nothing inconsistent between the joint custody presumption applied at the time of an initial custody decision and the status quo presumption applied two or more years later, the time after which the status quo presumption applies.

¶ 42. As the lead opinion points out, when courts construe statutes, specific language controls general language. *See Brown County v. State Pub. Defender*, 167 Wis. 2d 168, 174, 482 N.W.2d 665 (Ct. App. 1992) ("[W]hen a general and a specific statute relate to the same subject matter, the specific statute controls."). Here, WIS. STAT. § 767.325(1)(b)2 is specific and clear, whereas § 767.325(5m) is general and, as it relates to this topic, at best ambiguous. I agree with the lead opinion's statement that "[i]f a sufficient number of legislators had reached agreement that the status quo presumption should not apply when an existing custody order is for sole custody, then surely the legislature

would have chosen a means less obscure than § 767.325(5m) to achieve that result." Lead opinion at ¶ 27. Stated differently, there is no ambiguity because the unambiguous specific language of § 767.325(1)(b)2 controls over the ambiguous general language found in § 767.325(5m).

¶ 43. The dissent proposes a creative solution not suggested by either party. However, I agree with the view expressed by the lead opinion that applying both presumptions simultaneously is not a viable interpretation of the statutes. I offer a few more words on that topic.

¶ 44. It is not hard to imagine how the dissent's proposal would be received by parties and trial court judges. Putting myself in the place of a trial court judge attempting to apply the dissent's proposal, I might ask the following:

> Now let me get this straight. The mother here has sole custody because of the 1999 order. The father wants a switch to joint custody. There is a lot of credible evidence both for and against maintaining the status quo. Do I have this right? Is the court of appeals telling me I must apply both the presumption of continued sole custody and the presumption that I should switch to joint custody? I guess I am supposed to decide which presumption gets more weight, but how should I do that?

The dissent's proposal has the effect of nullifying both presumptions in cases in which a presumption is needed most, that is, close cases where it is not clear whether the current custody arrangement should be maintained or modified.

¶ 45. Finally, I note that the dissent weaves into its discussion a topic not emphasized by the parties or the lead opinion: the maximization-of-placement-time directive found in WIS. STAT. § 767.24(4)(a)2. The allocation of placement time often has a greater effect on

336

children and parents than decision-making authority conferred by custody allocation orders. It seems to me that Palmersheim's argument in this regard is weaker still because, as the dissent explains, in contrast to custody, there is no presumption of equal physical placement. *See Lofthus v. Lofthus*, 2004 WI App 65, ¶ 14, 270 Wis. 2d 515, 678 N.W.2d 393, *review dismissed,* 2004 WI 50, 271 Wis. 2d 113, 679 N.W.2d 547 (No. 03–1754); *Arnold v. Arnold*, 2004 WI App 62, ¶ 2, 270 Wis. 2d 705, 679 N.W.2d 296, *review denied,* 2004 WI 50, 271 Wis. 2d 112, 679 N.W.2d 547 (No. 03–1547), cert. denied, 125 S.Ct. 112 (2004); *Keller v. Keller,* 2002 WI App 161, ¶ 12, 256 Wis. 2d 401, 647 N.W.2d 426. If I am wrong in my conclusion that there is no conflict between the joint custody presumption applicable to initial custody decisions and the status quo presumption applicable to modification proceedings, then an important question arises as to whether there is a conflict between the maximization-of-placement-time directive (which is something less than an equal placement presumption) and the continuity presumption.

¶ 46. It would be hard to overstate the importance of the subjects we address today: decision-making authority of parents and placement time. I readily admit I do not know whether the legislature subjectively intended to eliminate or modify the status quo presumption in cases like the one before us. I only know that it failed to do so. At the same time, this court does not have the final word on the topic. The dissent recommends that the supreme court accept this case for review if a petition is filed, and I join in that recommendation. Further, if the legislature's intent was to eliminate or modify the status quo presumption, the lead, dissenting, and concurring opinions in this case should leave no doubt as to how that goal can be achieved.

¶ 47. DEININGER, P.J. (*dissenting*). I agree with the lead opinion that the trial court erred in concluding that there had not been a substantial change in circumstances since the initial custody and placement determinations in this paternity action. The lead opinion concludes that this error was harmless, which perhaps it was, because the trial court ostensibly went on to consider whether modifications to the existing order would be in the child's best interest. I do not agree, however, with the lead opinion's conclusion that the trial court applied the proper standard of law in determining that it would not be in the child's best interest to modify the existing allocation of custody and placement.

¶ 48. Rather, I conclude the trial court erred in giving no consideration whatsoever to the legislatively mandated presumption "that joint legal custody is in the best interest of the child," WIS. STAT. § 767.24(2)(am) (2001–02),[1] or to the legislature's direction "to set a placement schedule that maximizes the amount of time the child may spend with each parent," § 767.24(4)(a)2. I would reverse the appealed order and remand to allow the trial court to consider whether, under the applicable statutes, correctly interpreted, joint custody should be ordered and the present physical placement schedule modified. Accordingly, I respectfully dissent.

¶ 49. There can be no question that the trial court felt constrained to apply the "continuity presumptions," WIS. STAT. § 767.325(1)(b)2, and only those presumptions, in determining whether the modifications sought by Palmersheim were in the best interest of the child.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

The trial court's comments strongly suggest that, had it not believed itself to be so constrained, it might have ordered modifications to the existing custody and placement arrangements:

> The Court has to follow the statute .... It's not what I want to do; it's what I have to do. I've got to follow the statute. The statute is telling me there's a rebuttable presumption that continuing the current allocation of decisionmaking is in the best interests of the child, and I can't find sufficient evidence in this record to overcome that presumption.
>
> Let's go to the next part of it. Continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interests of the child. And in order to get that change, you've got to have that substantial change in circumstances.
>
> ... I respect the guardian ad litem's recommendation, and I respect the recommendation of the social worker.[2] I've got to follow the statute, and I'm not sure the statute—I'm not satisfied from the evidence that there's a substantial change in circumstances which allow me to make the modifications that I think are probably appropriate .... In fact, as I was considering this, I thought about expanding the, the visitation, but as I read this statute, I can't do that unless I am satisfied that there's been a substantial change in circumstances. So in essence, it's ... almost easier in an initial finding when the parties first come before the Court to have the Court make types of findings that would allow for visitation that the Court believes are

---

[2] The guardian ad litem recommended joint legal custody and increased physical placement with Palmersheim. Although he did not file a separate brief, the guardian ad litem has informed us that he supports Palmersheim's arguments on appeal. The social worker also recommended joint custody and increased placement with Palmersheim.

appropriate. But I think that given the statute the way it is, I . . . don't think I can do it . . . .

. . . .

I understand Mr. Palmersheim's wanting to have joint custody and wanting to have extended periods of physical placement, but I don't think I can do it under the statute. I think that Mr. Palmersheim is well-motivated. I respect that. I think he's a good father.

¶ 50. The trial court's comments indicate that it may have intertwined its analysis of whether a change of circumstances had been demonstrated with its analysis of the best interest of the child in light of the continuity presumptions under WIS. STAT. § 767.325(1)(b)2. If that is the case, the court's error in finding no change in circumstances may not have been as harmless as the lead opinion concludes. Lead opinion at ¶ 15. Even though the trial court refers in the quoted portion of its ruling to a lack of changed circumstances, it was also clearly engaged in a determination of whether the continuity presumptions had been overcome. Had the trial court considered the legislative directives which favor joint legal custody and the maximization of placement time with each parent, WIS. STAT. § 767.24(2)(am) and (4)(a)2, as counterpoints to the continuity presumptions, as I conclude it was required to do, the trial court might well have granted modifications to the existing order.

¶ 51. When a trial court's discretionary determination rests on an erroneous view of the law, the court has erroneously exercised its discretion. *See State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968). I conclude that is what happened here.

¶ 52. Under the plain language of WIS. STAT. § 767.325(5m), which was enacted at the same time[3] as

---

[3] *See* 1999 Wis. Act 9, § 3065ck.

the directives in favor of joint custody and maximization of placement time with each parent, "[i]n all actions to modify legal custody or physical placement orders, the court shall consider the factors under 767.24(5) and *shall make its determination in a manner consistent with s. 767.24*" (emphasis added). Legislative history provided to us by Palmersheim supports a conclusion that the legislature intended that courts consider its preferences for joint custody and maximization of placement time with each parent whenever a court makes custody and placement decisions. An earlier version of the legislative bill that ultimately became 1999 Wis. Act 9 provided in the newly created § 767.325(5m) that a court faced with a modification request must consider only the custody and placement factors listed in WIS. STAT. § 767.24(5). The provision was amended before final passage, however, to add the direction for courts to make the determination regarding modification "in a manner consistent with s. 767.24." The added language was apparently suggested to the drafting attorney by a member of the legislative lead author's staff, who explained in a memo to the drafter:

> It appears that modifications to [the bill] suggested by the State Bar . . . would make the changes in the factors under s. 767.24(5) applicable to revisions of legal custody and physical placement orders. That memo, however, is silent with respect to the applicability of important changes to the language that are being made in s. 767.24(4)(a). The language below is intended to address this issue.

¶ 53. By relying on only the continuity presumptions of WIS. STAT. § 767.325(1)(b)2, the trial court failed to consider the possible countervailing effects of the express legislative directives favoring joint custody and

maximization of placement time with each parent expressed in Wis. Stat. § 767.24(2)(am) and (4)(a)2. Thus, the trial court, in my view, violated the legislature's mandate in Wis. Stat. § 767.325(5m) that a court "shall make its determination in a manner consistent with s. 767.24" when considering whether to modify existing custody and placement orders under § 767.325.

¶ 54. The lead opinion justifies the trial court's failure to consider the effect of Wis. Stat. § 767.24(2)(am) and (4)(a)2 by concluding that certain provisions in § 767.24 apply only to initial custody and placement determinations but never to modification proceedings under Wis. Stat. § 767.325. Lead opinion at ¶ 24.[4] It opines that applying the presumption under § 767.24(2)(am) in favor of joint custody to modification proceedings "would, in essence, eliminate the § 767.325(1)(b) presumption favoring the status quo." *Id*. But much the same can be said of the lead opinion's holding: it "in essence, eliminate[s]" the joint custody presumption of § 767.24(2)(am), the legislature's directive in § 767.24(4)(a)2 to maximize placement time with each parent, and the mandate of § 767.325(5m) that courts are to make modification determinations "in a manner consistent with s. 767.24."

¶ 55. In my view, the lead opinion has not sufficiently explained why we must conclude that the legislature meant what it said in Wis. Stat. § 767.325(1)(b)2

---

[4] Although the lead opinion finds Wis. Stat. § 767.24(2)(am), and apparently § 767.24(4)(a)2, inapplicable to modification proceedings, it finds § 767.24(5) to be "plainly applicable" to modifications. Lead opinion at ¶ 20. I find no language in either § 767.24 or Wis. Stat. § 767.325(5m) that allows us to pick and choose from among the provisions of § 767.24 those with which modification decisions must be consistent and those which may be ignored.

but not what it has more recently said in WIS. STAT. §§ 767.24(2)(am), 767.24(4)(a)2, and 767.325(5m). I am not persuaded that, in order to harmonize these statutes, we must necessarily ignore *any* of the legislature's directives. Rather, when we are "interpreting two statutes that are alleged to conflict, it is our duty to attempt to harmonize them in a way that will give effect to the legislature's intent in enacting both statutes." *City of Madison v. DWD*, 2003 WI 76, ¶ 11, 262 Wis. 2d 652, 664 N.W.2d 584.

¶ 56. One advantage of the lead opinion's interpretation, of course, is its simplicity. By permitting courts to simply ignore the express legislative directives in favor of joint custody and maximization of placement time with each parent expressed in WIS. STAT. § 767.24(2)(am) and (4)(a)2 when acting on modification requests, the lead opinion no doubt makes life a little easier for trial courts and much easier for parties seeking to maintain the status quo in sole-custody and substantially one-sided placement arrangements. Under what I believe to be the correct interpretation and application of the statutes, however, a party moving for modifications would be able to benefit from the legislative preferences expressed in § 767.24(2)(am) and (4)(a)2, while still shouldering significant burdens in seeking to disturb the status quo. Moreover, contrary to the lead opinion's suggestion, Lead opinion at ¶ 28, trial courts would not be without guidance in how to approach the modification determination.

¶ 57. First, if an existing order provides for joint custody and a placement schedule that arguably maximizes placement time with each parent, "taking into account geographic separation and accommodations for different households," WIS. STAT. § 767.24(4)(a)2, the party requesting changes would indeed swim upstream

against a strong current of multiple legislative directives favoring the status quo. Moreover, even if the existing order provides for sole custody or a significantly one-sided placement schedule, but the order was entered at a time when the directives of the present § 767.24(2)(am) and (4)(a)2 were in effect, the moving party still has significant obstacles to overcome. He or she must show, as a threshold matter, that the circumstances that prompted the court to enter the original one-sided order, despite the legislative directives disfavoring it,[5] have changed substantially. *See* WIS. STAT. § 767.325(1)(b)1.b.

¶ 58. It is only in the present circumstance that something approaching parity in the arguably dueling presumptions and directives occurs.[6] The alleged con-

---

[5] *See, e.g.,* WIS. STAT. § 767.24(2)(b)2, which permits a court, absent agreement of the parties, to order sole legal custody to one of them "only" if certain circumstances exist.

[6] I recognize that, while WIS. STAT. § 767.24(2)(am) creates an express presumption in favor of joint custody, § 767.24(4)(a)2 creates no similar presumption in favor of equal placement time for each parent. We concluded in *Keller v. Keller,* 2002 WI App 161, ¶ 12, 256 Wis. 2d 401, 647 N.W.2d 426, that § 767.24(4)(a) does *not* create a presumption in favor of equal placement. (We have recently reaffirmed that interpretation and concluded further that a parent enjoys no constitutional right to equal placement following divorce or estrangement from the other parent. *See Arnold v. Arnold,* 2004 WI App 62, 270 Wis. 2d 705, 679 N.W.2d 296, *review denied,* 2004 WI 50 (Wis. Apr. 20, 2004) (No. 03–1547), and *Lofthus v. Lofthus,* 2004 WI App 65, 270 Wis. 2d 705, 679 N.W.2d 296, *review dismissed,* 2004 WI 50 (Wis. Mar. 10, 2004.) (No. 03–1754). We remanded in *Keller* to allow the trial court to consider whether, under a proper interpretation of § 767.24(4)(a)2, the modification sought would be in the best interest of the child and whether the continuity presumption under WIS. STAT. § 767.325(1)(b) had been overcome. *See*

flict is not irreconcilable, however, as the lead opinion concludes. The legislature, by enacting Wɪs. Sᴛᴀᴛ. § 767.325(5m), has expressed its intent that a parent who seeks modifications consistent with the presumption in Wɪs. Sᴛᴀᴛ. § 767.24(2)(am) favoring joint custody, or with the directive in § 767.24(4)(a)2 for maximizing placement time with each parent, should have the benefit of the court's consideration of these legislative preferences in the modification proceedings.[7] Again, the moving parent would still bear the burden of showing as a threshold matter that circumstances have changed since the initial custody and placement determinations. But, if a parent makes the required showing (which the lead opinion agrees Palmersheim has done, Lead opinion at ¶ 14), when deciding whether it is in the best interest of a child to modify an existing order for sole custody or substantially unequal placement, a court should consider the presumption of § 767.24(2)(am), the directive under § 767.24(4)(a)2, *and* the continuity presumptions under § 767.325(1)(b)2.

¶ 59. Although the competing presumptions may seem to point toward different outcomes in cases like

---

*Keller*, 256 Wis. 2d 401, ¶ 13. We did not say or even suggest, however, that the continuity presumption precluded the court from even considering the directive in § 767.24(4)(a)2 in favor of maximizing placement time with each parent. Rather, our instructions in *Keller* are consistent with what I believe to be the proper disposition in this case: the trial court should consider both the continuity presumptions under § 767.325(1)(b) and the directives of § 767.24 in deciding Palmersheim's modification motion.

[7] This is especially true for a parent like Palmersheim who did not have the benefit of the 1999 legislative changes at the time of the initial custody and placement determinations. My reading of these statutes thus eliminates any equal protection concerns.

this one, that will not necessarily be the case once the trial court has taken evidence and made its findings. *See* Wɪs. Sᴛᴀᴛ. § 903.01 (providing that a "presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence"). For example, the presumption under Wɪs. Sᴛᴀᴛ. § 767.24(2)(am) in favor of joint legal custody might be overcome by showing that "[o]ne party is not capable of performing parental duties and responsibilities," or that "[t]he parties will not be able to cooperate in the future decision making required under an award of joint legal custody." Section 767.24(2)(b)2. The directive that "the amount of time the child may spend with each parent" should be maximized invites evidence relating to the "geographic separation and accommodations for different households" and whether more equalized sharing of placement would adversely affect the child's "physical, mental or emotional health." *See* § 767.24(4)(a)2 and (4)(b). The continuity presumptions of Wɪs. Sᴛᴀᴛ. § 767.325(1)(b)2, on the other hand, seemingly call for evidence showing that the child would not be adversely affected by the proposed change, or perhaps that the benefits accruing to the child from a change would outweigh any benefits of maintaining existing custody and placement arrangements.

¶ 60. After hearing the evidence, the trial court should first make findings regarding whether any presumptions under Wɪs. Sᴛᴀᴛ. § 767.325(1)(b)2 and Wɪs. Sᴛᴀᴛ. § 767.24(2)(am) had been overcome, and whether the placement directive of § 767.24(4)(a)2 was shown to be infeasible or inadvisable. If the court concludes that the presumptions favoring the status quo are overcome and the competing presumption and directive are not, or vice versa, the outcome will be clear. If neither are overcome, however, leaving the § 767.325(1)(b)2 pre-

sumptions pointing toward maintaining the status quo and the § 767.24(2)(am) presumption or the § 767.24(4)(a)2 directive pointing toward modifications, the trial court's final task is to assess the strength of the competing legislative directives on the record before it, and ultimately, to determine which should receive the greater weight in the case at hand.

¶ 61. The weighing of competing goals and policy considerations is the essence of discretionary decision making. *See, e.g., Connor v. Connor*, 2001 WI 49, ¶ 27, 243 Wis. 2d 279, 627 N.W.2d 182 ("In its exercise of discretion, the court 'must attempt to strike the appropriate balance between the countervailing policy considerations that consistently pull at either end of the . . . spectrum.' "); *State v. White*, 2000 WI App 147, ¶ 4, 237 Wis. 2d 699, 615 N.W.2d 667 (concluding that trial courts "must exercise discretion on a case-by-case basis in order to balance and give effect to the [competing] goals"). That did not happen in this case because the trial court felt constrained by WIS. STAT. § 767.325(1)(b)2 to maintain the status quo. It thus gave no weight whatsoever to the express statutory preferences favoring joint custody and the maximization of placement time with each parent, which the legislature has determined to be in the best interests of children absent indications to the contrary. Because of this omission, which I conclude is contrary to the express mandate of § 767.325(5m), I would reverse and remand for further proceedings on Palmersheim's motion.

¶ 62. In sum, I conclude that the statutes under review indicate legislative preferences for certain outcomes which may or may not be in conflict in a given modification proceeding. Instead of simply ignoring pertinent legislative pronouncements, as the lead

opinion's holding does, I believe a trial court must be permitted to consider whether the parties have rebutted the presumptions or directives weighing against their respective positions. I believe that this interpretation avoids the flaw in the lead opinion's analysis of ignoring express statutory directives, and it gives life to the legislative intent underlying the provisions of both Wis. Stat. §§ 767.24 and 767.325. Finally, because the lead opinion has concluded otherwise, and the arguably conflicting legislative pronouncements present an issue of statewide importance, I respectfully recommend that the supreme court accept review should Palmersheim request it.