PER CURIAM.
¶1 Nichole Day, pro se appellant, appeals a circuit court order revising a prior child placement order. Michael Hernandez, by his counsel, and the child's guardian ad litem have filed responsive briefs arguing that the circuit court's decision should be upheld. For the reasons discussed below, we affirm the order of the circuit court.
BACKGROUND
¶2 E.L.H. was born in 2011 and is the nonmarital child of Nichole Day and Michael Hernandez. In 2012, Day and Hernandez agreed to the entry of a stipulated order granting them joint custody of E.L.H., with primary physical placement with Day and periods of physical placement with Hernandez. The stipulated order provided a schedule by which E.L.H.'s periods of placement with Hernandez increased over time, from every other Sunday to every other Sunday plus one week each month. The stipulated order stated: "The parties will need to reach additional placement agreements once the minor child commences school." The order further stated that either party could move the court to review the placement schedule when E.L.H. started school.
¶3 E.L.H. attended kindergarten during the 2016-2017 school year. Hernandez filed a motion for modification of placement in September 2016, requesting increased weekend placement during the school year and physical placement of E.L.H. during the entirety of E.L.H.'s summer break. In December 2016, Hernandez filed an amended motion, requesting primary physical placement. Pursuant to a stipulation, the court ordered a custody study and a psychological examination of the parties. Dr. Kenneth Waldron conducted the evaluations and filed a report recommending that Hernandez have primary physical placement of E.L.H. during the school year.
¶4 The court held a two-day placement hearing at which it heard testimony from several witnesses, including Hernandez and Day. On the second day of the hearing, Dr. Waldron was called to testify by the guardian ad litem, without objection from Day. At the close of the motion hearing, the circuit court granted primary placement with Hernandez during the school year, and placement with Day on long weekends, school breaks, and summer vacation as scheduled by the court.
¶5 Day moved for reconsideration and, after briefing and a hearing, the circuit court made an oral ruling reaffirming its decision that physical placement should be with Hernandez, but explaining in greater detail its reasoning for the decision. The court then entered a written order of its decision on November 13, 2017. Day now appeals.
DISCUSSION
¶6 WISCONSIN STAT. § 767.451(1)(b) (2017-18)[1] governs revision of legal custody and physical placement orders after a two-year period following the entry of the final judgment determining custody or placement. Under § 767.451(1)(b)1., a court may substantially modify a physical placement schedule if the court finds both that the modification is in the best interest of the child and that there has been a substantial change of circumstances since the entry of the last placement order. There is, however, a rebuttable presumption that continuing primary placement with the parent with whom the child currently resides is in the child's best interest. WIS. STAT. § 767.451(1)(b)2.
¶7 We first address Day's argument that the circuit court erred in finding that there had been a substantial change of circumstances since the entry of the last placement order in 2012. "Whether there is a substantial change in circumstances is a mixed question of law and fact." Abbas v. Palmersheim , 2004 WI App 126, ¶8, 275 Wis. 2d 311, 685 N.W.2d 546. "The circuit court's findings of fact regarding an alleged change of circumstance since the last custody and placement order will not be disturbed unless clearly erroneous." Id. "However, whether a substantial change in circumstances has occurred is a question of law. Because the circuit court's legal determination is mixed with its factual findings, we give weight to the circuit court's decision." Id. (citations omitted).
¶8 Here, the circuit court explicitly found that there had been substantial changes of circumstances since the original placement order was entered in 2012. The court found that, when E.L.H. was born, Hernandez was living in Indiana and was working as an apprentice with significant work responsibilities and not a lot of control over those responsibilities. The court further found that, in the years since the original order, Hernandez's life had grown more stable and his relationship with E.L.H. had become substantial. These findings are supported by the record. Hernandez testified at the placement hearing that, while he used to get "stuck at work" when he was an apprentice pipe fitter, he had since achieved the level of journeyman, which offers him flexibility to choose what jobs to take and whether or not to work overtime. Hernandez also testified that he had gotten married and no longer lived with his parents.
¶9 The court also found that it had become apparent, since the time of the original placement order, that Day "has emotional and personality issues" and that her life had become less stable. This finding, too, is supported by the record. Day pled guilty to misdemeanor criminal damage to property for a 2012 incident in which she damaged the car of a man she had been dating, after finding out that he had cheated on her. Day also testified that she was cited for disorderly conduct in 2014 after she hit a man while bartending at her father's tavern.
¶10 The record also reflects that, starting when E.L.H. was two years old, Day became romantically involved with a man named Ben Bollant. Day and Bollant lived together and had a child together. Day testified that Bollant was "primarily the father" to E.L.H. from age two to age five. Day also testified that Bollant is an alcoholic and that her relationship with him began to unravel in 2016 when Bollant exhibited abusive and bullying behavior. Day testified that she ceased living with Bollant in April 2016 and that she reported his abusive behavior to the police. In February 2017, Day got into a bar fight with Bollant's mother. Dr. Waldron testified at the placement hearing that, based on psychological testing and Day's history, Day demonstrated problems with anger management and impulsivity.
¶11 Based on all of the above, we are satisfied that the circuit court did not err in determining that there had been substantial changes of circumstances since the entry of the 2012 placement order.
¶12 We turn, then, to Day's argument that the circuit court failed to adequately address the rebuttable statutory presumption that continuing E.L.H.'s current placement was in E.L.H.'s best interest. See WIS. STAT. § 767.451(1)(b)2. The record reflects that the court explicitly considered the presumption and discussed it in detail, examining the correct statutory standard and relevant case law. The court stated: "We apply the factors from 767.41(5)(am) and in applying them, I think the presumption means that we apply them with a view toward maintaining the current setup." Day's argument that the circuit court failed to adequately address the rebuttable presumption of § 767.451(1)(b)2. is simply without merit.
¶13 We turn next to Day's argument that, in determining that modification of placement was in E.L.H.'s best interest, the circuit court failed to adequately apply the factors set forth in WIS. STAT. § 767.41(5)(am). We reject this argument because, again, the record establishes otherwise. Section 767.41(5)(am) provides that, in determining periods of physical placement, "the court shall consider all facts relevant to the best interest of the child," and lists sixteen factors to be considered in determining the child's best interest. Here, the circuit court delineated each factor under § 767.41(5)(am) and ruled as to how each factor affected its placement decision. We are satisfied that the record contains more than enough evidence to sustain the court's discretionary decision that modification of primary placement from Day to Hernandez was in E.L.H.'s best interest. We will not reiterate each statutory factor and the court's findings as to each factor here. The circuit court applied the correct legal standard to the facts of record and reached a reasonable decision. The placement order therefore must be affirmed. See Landwehr v. Landwehr , 2006 WI 64, ¶7, 291 Wis. 2d 49, 715 N.W.2d 180 (we affirm the circuit court's discretionary decision regarding the modification of placement when the court applies the correct legal standard and reaches a reasonable result).
¶14 Finally, we reject Day's argument that the circuit court failed to ensure that both parties were provided with a neutral psychological evaluation. Day concedes that the court offered her the opportunity to hire her own psychologist. Day elected not to hire her own evaluator. Now, she argues on appeal that Dr. Waldron's neutrality was compromised because he was aware at the time he conducted his evaluations that Hernandez had advanced the fee for the evaluations.[2] However, Day did not raise this issue before the circuit court and, therefore, it is forfeited. See State v. Huebner , 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (issues that are not preserved at the circuit court generally will not be considered on appeal).
¶15 Finally, Day makes reference in her briefs to the child relocation statute, WIS. STAT. § 767.481, but fails to develop any coherent argument regarding its application in this case. This argument is so inadequately developed that it does not warrant our attention, and we will not address it. See Libertarian Party of Wis. v. State , 199 Wis. 2d 790, 801, 546 N.W.2d 424 (1996) (an appellate court need not discuss arguments that lack "sufficient merit to warrant individual attention"); Grothe v. Valley Coatings, Inc. , 2000 WI App 240, ¶6, 239 Wis. 2d 406, 620 N.W.2d 463 (we need not address arguments unsupported by record citations), abrogated on other grounds by Wiley v. M.M.N. Laufer Family Ltd. P'ship , 2011 WI App 158, 338 Wis. 2d 178, 807 N.W.2d 236.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The parties had stipulated that Hernandez would advance the fee, but that the circuit court would determine the final allocation of the cost of Waldron's evaluations and testimony at the final hearing.