280 Wis.2d 585 (2005)
2005 WI App 74
695 N.W.2d 875.
Agnes E. MACIOLEK, and Agnes E. Maciolek, Trustee Under the Gerald B. Maciolek and Agnes E. Maciolek Revocable Trust Dated January 21, 1997, Plaintiffs-Respondents,[]
v.
CITY OF MILWAUKEE EMPLOYES' RETIREMENT SYSTEM ANNUITY AND PENSION BOARD, Defendant-Appellant.
No. 04-1254.
Court of Appeals of Wisconsin.
Oral argument February 2, 2005.
Decided March 15, 2005.
On behalf of the defendant-appellant, the cause was submitted on the briefs of Kathy L. Nusslock and Daniel J. Borowski of Davis & Kuelthau, S.C. of Milwaukee. There was oral argument by Kathy L. Nusslock.
On behalf of the plaintiffs-respondents, the cause was submitted on the brief of and oral argument by James J. Winiarski of Milwaukee.
Before Fine, Curley and Kessler, JJ.
*587 ¶ 1. KESSLER, J.
The City of Milwaukee Employes' Retirement System Annuity and Pension Board ("ERS") appeals from an order granting summary judgment in favor of Agnes E. Maciolek ("Agnes") personally and as Trustee of the Gerald B. Maciolek and Agnes E. Maciolek Revocable Trust dated January 21, 1997. At issue is not whether the Trust is entitled to $27,422.24 in benefits; all parties agree the Trust should be paid. The issue is whether, as the holder of an asset due to a decedent, ERS can require Agnes to follow the procedures outlined in WIS. STAT. § 867.046(1m) before ERS is required to make payment. No Wisconsin case has specifically addressed this question.
¶ 2. After a careful review of the relationship between the statutes permitting "Washington Will" provisions in marital property agreements and the statutes providing for effecting transfers pursuant to such agreements, we conclude that the statutory provisions upon which ERS insisted are the only ones available to effect the transfer of this type of property, in the absence of an agreement between the holder of the property and the person seeking its transfer. Agnes must follow the court *588 confirmation procedures outlined in WIS. STAT. § 867.046(1m) (2003-04).[1] Accordingly, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

BACKGROUND
¶ 3. In January 1997, Gerald and Agnes, husband and wife, consistent with WIS. STAT. § 766.58 (1997-98),[2] executed a Marital Property Agreement ("Agreement"). That Agreement created a revocable trust. The Agreement also contained a "Washington Will" provision, which allowed property that would otherwise require probate to pass in a non-probate manner to the Trust upon the death of either spouse.[3] The Agreement between Agnes and Gerald also included the following provisions:
1. Upon the death of either of the parties hereto, all of the decedent's ownership interests in any and all property which would otherwise be subject to probate administration, shall immediately pass to and vest in the Trustee of the "GERALD B. MACIOLEK AND AGNES E. MACIOLEK REVOCABLE TRUST DATED JANUARY 21, 1997" without probate and by nontestamentary disposition. UPON DEMAND AND UPON *589 RECEIPT OF A COPY OF THIS AGREEMENT, ANYONE HAVING POSSESSION OF ANY SUCH PROPERTY SHALL IMMEDIATELY TRANSFER SAID PROPERTY TO THE SAID TRUSTEE. THE TRANSFER SHALL OCCUR WITHOUT FURTHER PROOF OF AUTHORITY OR OWNERSHIP OF SAID PROPERTY, AND WITHOUT ANY KIND OF COURT PROCEEDING OR COURT ORDER.
....
21. DIRECTIONS TO ANYONE HOLDING PROPERTY UPON OUR RESPECTIVE DEATHS. UPON THE FIRST SPOUSE'S DEATH, PLEASE IMMEDIATELY PAY OR RE-TITLE ALL ASSETS IN MY NAME, AND WHICH WOULD OTHERWISE BE SUBJECT TO PROBATE, TO THE TRUSTEE OF THE "GERALD B. MACIOLEK AND AGNES E. MACIOLEK REVOCABLE TRUST DATED JANUARY 21, 1997". FOLLOW HIS OR HER INSTRUCTIONS. PLEASE DO NOT REQUIRE ANY KIND OF COURT APPROVAL OR DOMICILIARY LETTERS ....
(Emphasis in original; bolding removed.)
¶ 4. Gerald died on May 28, 2001. It is undisputed that at the time of his death, Gerald was entitled to $27,422.24 in benefits under the Global Pension Settlement ("GPS"), and that these benefits had not yet been paid. ERS was the entity holding this property and was responsible for distributing these assets. Agnes delivered documents to ERS indicating that she was the representative of Gerald's estate, that no personal representative had been court-appointed for Gerald's estate, and that the value of Gerald's solely owned property was greater than $20,000.[4] ERS did not (and does *590 not) dispute the validity of the Agreement, and did not claim that anyone other than Agnes was entitled to Gerald's benefits. ERS sent Agnes a packet of information that outlined a variety of procedures that she could use to facilitate payment of the benefits. All of these procedures are authorized by Wisconsin statutes and require some court proceeding or court authentication of her documents. The alternatives range from full probate to summary procedures.
¶ 5. ERS asked Agnes to select one of the procedures for transferring the property. ERS specifically indicated: "ERS may accept other alternatives to the probate procedures described above. For example, ERS will honor a `Washington Will' provision in a Wisconsin Marital Property Agreement if a Certificate of Summary Confirmation of Interest in Property is obtained from a Wisconsin probate court."
¶ 6. In response, counsel for Agnes informed ERS that although Agnes would not seek a Certificate of Summary Confirmation of Interest in Property, which would require her to institute a court proceeding pursuant to WIS. STAT. § 867.046(1m), Agnes would file the Agreement with the Register of Deeds using Form HT-110,[5] a form that is consistent with § 867.046(2).
¶ 7. Agnes supplied ERS with a recorded Form HT-110, which she had modified, and a certified copy of the Agreement. ERS refused to accept the tendered documents as sufficient to effect the transfer of Gerald's *591 money to the Trust. ERS insisted that Form HT-110 cannot be used when the property at issue consists of GPS benefits and that Agnes must either use WIS. STAT. § 867.046(1m) or begin a probate proceeding, as those are the only transfer methods applicable to this type of property.
¶ 8. After a number of communications between the parties, which did not resolve the impasse, Agnes filed suit, seeking payment of the $27,422.24 in GPS benefits due Gerald.[6] The trial court granted summary judgment in Agnes's favor. This appeal followed.

DISCUSSION
¶ 9. Neither party argues that there are genuine issues of material fact in dispute. At issue is only whether Agnes could compel ERS to effectuate payment upon receipt of either the Agreement, together with proof of Gerald's death, or a recorded modified Form HT-110, as sufficient proof of the Trust's entitlement, or whether ERS had the right to insist on the protections afforded it by insisting on compliance with WIS. STAT. § 867.046(1m).
¶ 10. ERS argues that other than a probate proceeding, WIS. STAT. § 867.046(1m) is the only means provided by the legislature to effectuate a nonprobate transfer of these retirement benefits under a Washington *592 Will provision and to protect the transferor from liability for improper transfer.
¶ 11. In contrast, Agnes asserts that because the Washington Will nontestamentary transfer is specifically permitted by WIS. STAT. § 766.58(3)(f), no probate court proceeding, and no other involvement of a court, can be required by a transferor. In effect, Agnes argues that a Washington Will provision is, essentially, self-activating. In the alternative, Agnes argues that if some court proceeding is required, the procedure in WIS. STAT. § 867.046(2) is sufficient to require ERS to transfer this property.

A. Legal standards
[1-4]
¶ 12. Resolution of this case involves statutory interpretation, an issue of law that we review without deference to the trial court's opinion. State v. Greve, 2004 WI 69, ¶ 6, 272 Wis. 2d 444, 681 N.W.2d 479. When interpreting a statute, the primary objective "is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Knowing this, the court's analysis should begin with the plain language of the statutory text. Id., ¶ 45. If the language of the statute is clear on its face, the court should apply the statute using the common and generally accepted meanings of the terms. Fox v. Catholic Knights Ins. Soc'y, 2003 WI 87, ¶ 19, 263 Wis. 2d 207, 665 N.W.2d 181. With an unambiguous statute, the court need not consult extrinsic sources of interpretation. Kalal, 271 Wis. 2d 633, ¶ 46; see also Wagner v. Milwaukee County Election Comm'n, 2003 WI 103, ¶ 33, 263 Wis. 2d 709, 666 N.W.2d 816 ("[S]tatutes . . . should be construed to *593 give effect `to each and every word, clause and sentence' and `a construction that would result in any portion of a statute being superfluous should be avoided wherever possible.'") (citation omitted). With those rules of construction in mind, we examine the various relevant statutes.

B. Statutory background
¶ 13. WISCONSIN STAT. ch. 766 provides the overall structure of the Wisconsin marital property system. It also describes how many aspects of marital property classifications are to be implemented, particularly with respect to the impact on third parties. For example, WIS. STAT. § 766.56(2)(c) provides for advance notice to creditors if they are to be bound by provisions of a marital property agreement when they grant credit. WISCONSIN STAT. § 766.57 protects a bona fide purchaser in a sale, even if the purchaser has notice of the marital property agreement. WISCONSIN STAT. § 766.575 sets the rules for a trustee who administers property under a trust, and directs persons claiming entitlement to such property under a marital property agreement to assert their rights by submitting a formal notice of claim and the marital property agreement to the trustee. In effect, all of these provisions create a paper trail, which establishes the terms, if not the validity, of the agreement.
¶ 14. Analysis of WIS. STAT. § 766.58(3)(f), the statute authorizing Washington Will provisions in marital property agreements, is required here. The statute deals generally with what marital property agreements may provide. Section 766.58(3)(f) states that a marital property agreement may include a provision:
Providing that upon the death of either spouse any of either or both spouses' property, including after-acquired *594 property, passes without probate to a designated person, trust or other entity by nontestamentary disposition. Any such provision in a marital property agreement is revoked upon dissolution of the marriage as provided in s. 767.266 (1). If a marital property agreement provides for the nontestamentary disposition of property, without probate, at the death of the 2nd spouse, at any time after the death of the first spouse the surviving spouse may amend the marital property agreement with regard to property to be disposed of at his or her death unless the marital property agreement expressly provides otherwise and except to the extent property is held in a trust expressly established under the marital property agreement.
(Emphasis added.) In outlining the numerous things to which a marital property agreement may be applied, § 766.58(3m) states that "Chapter 854 applies to transfers at death under a marital property agreement." Specific reference to another statute dealing with the mechanics of property transfer in the very portion of the Wisconsin Marital Property Act permitting marital property agreements requires that we consider how to effect the provisions of both statutes. See Abbas v. Palmersheim, 2004 WI App 126, ¶ 23, 275 Wis. 2d 311, 685 N.W.2d 546 ("[W]here statutes relate to the same subject matter, they should be read together and harmonized if possible," which requires reading them "together in a way that gives each full force and effect.").
¶ 15. WISCONSIN STAT. ch. 854 establishes governing rules for nontestamentary transfers resulting from trusts, marital property agreements and the like when the transfer may impact some third party. For instance, it sets a variety of terms which apply in the event beneficiaries of nontestamentary transfers die before the decedents, or in the event property that is disposed of by such a transfer is still subject to a mortgage or has *595 been sold. Significantly, the chapter also provides protection for persons holding assets subject to nontestamentary dispositions who make payments or transfer assets consistent with the provisions of ch. 854.
¶ 16. WISCONSIN STAT. § 854.23[7] provides protection for payers and third parties who make payments pursuant to the requirements of a marital property agreement, and who do not have actual notice of a competing claim to the property. This protection, however, depends on whether the payer has received a "governing instrument" which is specifically defined by § 854.23(1) as one of only three specific alternatives. One alternative is a verified statement pursuant to WIS. STAT. § 865.201 by the person appointed as personal representative in an informal administration, which confirms the transfer of interest in property pursuant to a marital property agreement. A second alternative is the certificate obtained under WIS. STAT. § 867.046(1m), which requires a court to issue a certificate authorizing transfer of the property upon presentation of specific *596 identified documents to the court. A third alternative is a recorded application under § 867.046(5),[8] which permits any of the three alternative methods provided in § 867.046(1m), (2), and (3).
¶ 17. WISCONSIN STAT. § 867.046 provides the procedure for summary confirmation of an interest in property. It provides in relevant part:
867.046 Summary confirmation of interest in property.
(1) DEFINITIONS. In this section:
(a) "Beneficiary of a marital property agreement" means a designated person, trust or other entity having an interest in property passing by nontestamentary disposition under s. 766.58 (3) (f).
(b) "Survivorship marital property" means property held under s. 766.60 (5) (a).
(1m) UPON DEATH; GENERALLY. If a domiciliary of this state dies who immediately prior to death had an interest in property in this state, including an interest in survivorship marital property, or if a person not domiciled in this state dies having an interest in property in this state, including an interest in survivorship marital property, upon petition of the decedent's spouse or upon petition of a beneficiary of a marital property agreement to the court of the county of domicile of the decedent or, if the decedent was not domiciled in this *597 state, of any county where the property is situated, the court shall issue a certificate under the seal of the court. The certificate shall set forth the fact of the death of the decedent, the termination or transfer of the decedent's interest in the property, the interest of the petitioner in the property and any other facts essential to a determination of the rights of persons interested. The certificate is prima facie evidence of the facts recited, and if the certificate relates to an interest in real property or to a debt secured by an interest in real property, the petitioner shall record a certified copy or duplicate original of the certificate in the office of the register of deeds in each county in this state in which the real property is located.
(2) UPON DEATH; INTEREST IN PROPERTY. As an alternative to sub. (1m), upon the death of any person having an interest in any real property, a vendor's interest in a land contract, an interest in a savings or checking account, an interest in a security or a mortgagee's interest in a mortgage, including an interest in survivorship marital property, the decedent's spouse or a beneficiary of a marital property agreement may obtain evidence of the termination of that interest of the decedent and confirmation of the petitioner's interest in the property by providing to the register of deeds of the county in which the property is located the certified death certificate for the decedent and, on applications supplied by the register of deeds for that purpose, all of the following information . . . .
(Emphasis added.)

C. Whether WIS. STAT. § 867.046(1m) and (2) are optional mechanisms to confirm an interest in property
[5]
¶ 18. Agnes does not dispute that WIS. STAT. § 867.046(1m) and (2) provide mechanisms for court *598 confirmation. Instead, she argues their use is merely optional and that she need not elect to use them. Agnes contends that because her marital property agreement is consistent with WIS. STAT. § 766.58(3)(f) and because the Agreement, by its own terms, specifically states that no court confirmation should be required, ERS cannot require her to comply with the court confirmation procedures outlined in § 867.046. In essence, Agnes argues that she and Gerald were free to agree on how to implement their Agreement without regard to other legislative provisions or the interests of others holding assets to which her Agreement applies. Agnes asks us to conclude that the provisions of WIS. STAT. chs. 854 and 867 are merely surplusage, options available for those interested in using them.
¶ 19. Agnes misreads the context of these statutes and of WIS. STAT. § 766.58. No provision of § 766.58(3) permits the parties to ignore WIS. STAT. ch. 854 or to agree to prohibit court involvement in implementing their Agreement. Indeed, stipulations between parties purporting to deprive a court of jurisdiction have not fared well in the courts. See, e.g., Ayres v. Ayres, 230 Wis. 2d 431, 441, 602 N.W.2d 132 (1999) ("`[T]here is no such thing in this state as a divorce by consent or agreement. The parties cannot by stipulation proscribe, modify, or oust the court of its power to determine the disposition of property, alimony, support, custody, or other matters involved in a divorce proceeding.'") (citation omitted); see also Herrell v. Herrell, 144 Wis. 2d 479, 488, 424 N.W.2d 403 (1988) (Parties may not stipulate to a lesser standard of proof than that required by statute.). The "Washington Will" provisions permit transfer of property without probate. That does not mean the legislature allowed parties to agree to no court involvement in implementing transfer of ownership *599 and creating a reliable and public record of transfer. The very statutes that permit broad provisions in marital property agreements also specifically make agreements subject to the implementation mechanism of ch. 854. The legislature made transfers at death simpler than full probate, but it did not leave the mechanics and implementation to people's own devices. Certain public protections against fraud and clouded titles are still required by the legislative scheme set out in ch. 854 to implement these agreements, in the absence of agreement between the asset holder and the party seeking transfer of the asset.[9]

D. Use of WIS. STAT. § 867.046(2)
¶ 20. Agnes contends that even if a confirmation procedure under WIS. STAT. § 867.046 can be required by the party holding the property, she should be able to use the procedure outlined in § 867.046(2) to provide sufficient proof of ownership for ERS. Whether she is allowed to use the procedure outlined in that statute depends on whether the ERS benefits are included in the list of property to which § 867.046(2) applies. See League of Wisconsin Municipalities v. Department of Commerce, 2002 WI App 137, ¶ 21 n.6, 256 Wis. 2d 183, 647 N.W.2d 301 ("`Expressio unius est exclusio alterius' is a `canon of construction holding that to express or *600 include one thing implies the exclusion of the other.'") (citing BLACK'S LAW DICTIONARY 602 (7th ed. 1999)). Section 867.046(2) identifies as being subject to its benefits "an interest in any real property, a vendor's interest in a land contract, an interest in a savings or checking account, an interest in a security or a mortgagee's interest in a mortgage, including an interest in survivorship marital property." With respect to such property, "the decedent's spouse or a beneficiary of a marital property agreement" can take action. The question, therefore, is whether the benefits in question fall into any of these classifications.
¶ 21. Retirement benefits (or litigation settlements) are neither securities nor any of the real estate-related interests described. Neither are they a savings or checking account. Only if the benefits are "survivorship marital property" can they squeeze through the narrow door of WIS. STAT. § 867.046(2). Survivorship marital property is described and defined by WIS. STAT. § 766.60.[10] It is generally understood to be property *601 that is titled in more than one name in a particular manner, so that it will pass at the death of one to the survivor. Hence, the name "survivorship." All types of property can be subject to a marital property agreement, not just survivorship property. The benefits at issue here were titled only in Gerald's name. Counsel confirmed during oral argument that Gerald had no ability during his lifetime to transfer these assets to another person or to identify another person as a co-owner.[11] Consequently, the benefits are not survivorship marital property. Thus, we must conclude that Agnes was not entitled to use § 867.046(2) to terminate Gerald's interest in the GPS benefits. While some might think it better policy if the legislature had made this simpler method of transfer applicable to pension benefits, other retirement benefits, or litigation settlements, it did not choose to do so. Redress of this limitation must be sought other than from this court.

E. Whether the GPS benefits should be paid as marital property
[6]
¶ 22. Finally, we address Agnes's alternative argument that ERS should have paid her half of the GPS benefits because the benefits were marital property and, as the surviving spouse, she was entitled to her *602 marital interest, which is half of the benefits. Agnes asserts that if that had occurred, the remaining amount to be paid would have been less than $20,000 and she could have then obtained the remaining benefits by use of a simple affidavit of transfer pursuant to WIS. STAT. § 867.03. The record does not reflect that Agnes ever asked ERS to pay half of the GPS benefits to her personally. Whether Agnes could have elected to receive half of the benefits, and the proof she would have been required to submit, were not issues submitted to the trial court and thus are not properly before this court. We decline to consider them further. See Wirth v. Ehly, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140 (1980) (noting that this court generally does not consider issues which were not raised below), superseded on other grounds by WIS. STAT. § 895.52.
By the Court.Order reversed and cause remanded for further proceedings consistent with this opinion.
*603 
NOTES
[] Petition to review granted 6-1-2005.
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] Although WIS. STAT. § 766.58 has been amended since 1997, Agnes does not argue that this court is bound to consider the statute as it existed in 1997. Therefore, we will consider only the current version of the statute in our analysis.
[3] A "Washington Will" is a will substitute agreement specifically authorized by WIS. STAT. § 766.58(3)(f). Its name is derived from its origin in the community property laws of the state of Washington. 2 B. ABRAMSON ET AL., ADVISING OLDER CLIENTS AND THEIR FAMILIES § 14.113 (2000).
[4] Because the value of the estate exceeded $20,000, transfer by affidavit, available for estates of that or lesser value, was not available here. See WIS. STAT. § 867.03.
[5] Form HT-110 sets out the name, date of death and address of the decedent. It allows the person filing the form to check from a selection on the form the property to which it is intended to apply, and it indicates that a certified copy of the death certificate and the document establishing ownership are to be attached. All of this is recorded with the Register of Deeds in the county where the decedent was domiciled at death.
[6] Although it was acknowledged during oral argument that it would have been less expensive and faster to simply comply with ERS's request that Agnes use the summary confirmation procedure outlined in WIS. STAT. § 867.046(1m), concessions at oral argument suggest that both parties felt the issue of what proof is required to effectuate a Washington Will provision in a martial property agreement was one in need of resolution by the courts.
[7] WISCONSIN STAT. § 854.23 provides:

Protection of payers and other 3rd parties. (1) Definition. In this section, "governing instrument" includes a filed verified statement under s. 865.201, a certificate under s. 867.046 (1m) or a recorded application under s. 867.046 (5).
(2) Liability depends on notice. (a) A payer or other 3rd party is not liable for having transferred property to a beneficiary designated in a governing instrument who, under this chapter, is not entitled to the property, or for having taken any other action in good faith reliance on the beneficiary's apparent entitlement under the terms of the governing instrument, before the payer or other 3rd party received written notice of a claimed lack of entitlement under this chapter. However, a payer or other 3rd party is liable for a payment made or other action taken after the payer or other 3rd party received written notice of a claimed lack of entitlement under this chapter.
[8] WISCONSIN STAT. § 867.046(5) provides:

RECORDING; TERMINATION OF PROPERTY INTEREST. Upon the recording, the application constitutes prima facie evidence of the facts recited and constitutes the termination of the property interest, with the same force and effect as if issued by the court assigned to exercise probate jurisdiction for the county of domicile of the decedent under s. 867.04.
[9] This opinion should not be understood to mandate use of WIS. STAT. chs. 854 and 867 if the asset holder does not insist on their protections. For example, a bank that has known both husband and wife for many years may feel sufficiently protected to transfer the account to the survivor of a joint account merely upon presentation of a copy of the death certificate. Or, a surviving spouse may feel comfortable transferring property to a trust created in a marital property agreement to which the survivor was a party without creating a clear chain of title.
[10] WIS. STAT. § 766.60 provides:

Optional forms of holding property; survivorship ownership. (1) Spouses may hold marital property in a form that designates the holders of it by the words "(name of one spouse) or (name of other spouse) as marital property".
(2) Spouses may hold marital property in a form that designates the holder of it by the words "(name of one spouse) and (name of other spouse) as marital property".
. . . .
(5)(a) If the words "survivorship marital property" are used instead of the words "marital property" in the form described in sub. (1) or (2), the marital property so held is survivorship marital property. On the death of a spouse, the ownership rights of that spouse in the property vest solely in the surviving spouse by nontestamentary disposition at death. The first deceased spouse may not dispose at death of any interest in survivorship marital property. Holding marital property in a form described in sub. (1) or (2) does not alone establish survivorship ownership between the spouses with respect to the property held.
(Emphasis added.)
[11] We express no opinion as to whether these benefits were Gerald's sole property or whether they were marital property in which Agnes had an untitled ownership interest. That question was not raised below and is not before this court.