REDEVELOPMENT AUTHORITY OF the CITY OF MILWAUKEE, Plaintiff-Respondent,††

v.

UPTOWN ARTS AND EDUCATION, INC., John Charles Bins and Avenue Rental, Inc., Defendants-Appellants.
[Case No. 98–2389–FT]†

REDEVELOPMENT AUTHORITY OF the CITY OF MILWAUKEE, Plaintiff-Respondent,

v.

Diane VIVERETTE, d/b/a Viverette Amoco and Gerald R. Loebel, d/b/a Custom Marble Products, Defendants-Appellants,†

AMOCO OIL COMPANY and Nankybars, Defendants.
[Case No. 98–2390–FT]

Court of Appeals

*Nos. 98–2389–FT, 98–2390–FT. Submitted on briefs March 10, 1999.—Decided July 20, 1999.*

(Also reported in 599 N.W.2d 655.)

††Petition to cross review denied.
†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Alan Marcuvitz* and *Debra A. Slater* of *Weiss, Berzowski, Brady & Donahue LLP* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Gimbel* and *James Patrick Thomas* of *Michael Best & Friedrich LLP* and *David Saggio* and *Jennifer Pflug Murphy* of *Gonzalez, Saggio, Birdsall & Harlan, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

WEDEMEYER, P.J. Uptown Arts and Education, Inc., John Charles Bins, Avenue Rental, Inc., Diane Viverette, and Gerald R. Loebel (collectively "Uptown") appeal from a final judgment declaring that, pursuant to § 66.431(5)(a)3, STATS., the Redevelopment Authority of the City of Milwaukee (RACM) has the right to enter their properties, to conduct whatever inspections, surveys, appraisals, soundings or test borings necessary for fulfillment of RACM's objectives pursuant to the Blight Elimination and Slum Clearance Act.

Uptown claims that the trial court erred in so ruling because the testing and inspection provisions of § 66.431(5)(a)3, STATS., violate the warrantless search prohibitions of the United States and Wisconsin Constitutions. We conclude that the statute survives a constitutional challenge. However, because our interpretation of whether RACM's conduct was constitutional under the statute requires additional factual investigation by the trial court, we reverse and remand with directions.

## BACKGROUND

On April 30, 1998, RACM adopted a resolution, approving "the blight designation and spot acquisition of five privately owned properties" and authorizing their conveyance to the City of Milwaukee for the purpose of providing a site for a new police station. The properties are commercial in nature and are either owned or leased by Uptown. On May 27, 1998, the Common Council of the City of Milwaukee passed a resolution approving the blight designation of the properties and authorized their acquisition and conveyance to the City.

On several occasions, RACM attempted to gain access to the properties for appraisal purposes and to conduct environmental testing. Uptown permitted RACM limited access to appraise, but denied RACM any access for environmental testing and monitoring.

During June 1998, RACM filed complaints against Uptown seeking a declaratory judgment that § 66.431, STATS., entitled it to enter the properties "in order to make inspections, surveys, appraisals, soundings or test borings." The trial court stayed enforcement of the petition for injunction to address Uptown's claim that § 66.431(5)(a)3, STATS., was unconstitutional. After submission of briefs and a hearing, which revealed that RACM gave Uptown an opportunity to appear and to object to the proposed testing, the trial court concluded that the statute was constitutional. Uptown now appeals.

## ANALYSIS

Whether a statute is unconstitutional on its face, due to vagueness, overbreadth or as applied, is a question of law which we review independently. *See Lounge Management, Ltd. v. Town of Trenton*, 219 Wis. 2d 13, 19, 580 N.W.2d 156, 159, *cert. denied*, 119 S. Ct. 511 (1998). Uptown is faced with overcoming a strong presumption that the statute is constitutional. *See State v. Cissell*, 127 Wis. 2d 205, 214, 378 N.W.2d 691, 695 (1985) ("[T]here is a strong presumption favoring the constitutionality of a legislative enactment."). To be successful on this appeal, Uptown must prove beyond a reasonable doubt that the ordinance is unconstitutional. *See County of Portage v. Steinpreis*, 104 Wis. 2d 466, 478, 312 N.W.2d 731, 736 (1981) ("Unconstitutionality of the act must be demonstrated beyond a

reasonable doubt.") (quoted source omitted). The cardinal rule of statutory construction is to preserve a statute and to find it constitutional if it is at all possible to do so. *See Chappy v. LIRC*, 136 Wis. 2d 172, 185, 401 N.W.2d 568, 574 (1987). The duty of this court, if possible, is to construe the statute to find it in harmony with accepted constitutional principles. *See State ex rel. Harvey v. Morgan*, 30 Wis. 2d 1, 13, 139 N.W.2d 585, 590 (1966). We "may construe constitutionally deficient statutes to include constitutionally required provisions." *State v. Mahone*, 127 Wis. 2d 364, 369, 379 N.W.2d 878, 881 (Ct. App. 1985). We do so here to save the challenged provision of § 66.431(5)(a)3, STATS.

Uptown contends that the inspection and testing procedures authorized by § 66.431(5)(a)3, STATS., render that portion of the statute unconstitutional because it authorizes a warrantless search of private property in violation of the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. The portion of § 66.431(5)(a)3 relevant to this appeal reads:

> **(5)** POWERS OF REDEVELOPMENT AUTHORITIES. (a) Every authority is granted . . . all powers necessary or incidental to carry out and effectuate the purposes of this section, including the following powers:
>
> . . . .
>
> 3. . . . [W]ithin the boundaries of the city to enter into any building or property in any project area in order to make inspections, surveys, appraisals, soundings or test borings, and to obtain an order for this purpose from a court of competent jurisdiction in the event entry is denied or resisted.

Uptown asserts that the inspection and testing provisions of § 66.431(5)(a)3 are facially defective because they permit a warrantless search of private property,

contrary to the Fourth Amendment prohibition of warrantless searches of private property as enforced against the states through the Fourteenth Amendment. *See Mapp v. Ohio,* 367 U.S. 643, 655 (1961).

Uptown essentially bases its claim of facial unconstitutionality on *Camara v. Municipal Court,* 387 U.S. 523 (1967) and a companion case, *See v. Seattle,* 387 U.S. 541 (1967). In *Camara,* the United States Supreme Court held that the Fourth Amendment bars prosecution of a person who has refused to permit a warrantless code-enforcement inspection of his personal residence. *See Camara,* 387 U.S. at 539–40. The Court explained: "The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." *Id.* at 539. *See* extended the warrant requirement to commercial properties. *See See,* 387 U.S. at 542–43.

Uptown is not quarreling with RACM's right to gain access to blight-designated properties; it only challenges the manner and method by which the right to gain access is exercised. RACM argues that the procedures authorized by § 66.431(5)(a)3, Stats., do not constitute a warrantless search because the process of obtaining an order for access is equivalent to the process for obtaining a warrant, i.e., a court order allowing access for cause shown.[1] We now examine this contention.

---

[1] RACM further contends that, even if the inspections under § 66.431(5)(a)3, Stats., are deemed "warrantless searches," they are permissible as exceptions to the warrant requirement under the three-part test set forth in *New York v.*

Under the statute, RACM, to facilitate blight removal through condemnation proceedings, has the power "to enter into any building" and if "in the event entry is denied or resisted" it has the power "to obtain an order for the purpose of entry." Section 66.431(5)(a)3, STATS. The problem with the statute, as we see it, is not what it says, but what it does not say. RACM asks us to assume the determination of too many factual underpinnings that are present in a warrant equivalency proceeding. In *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978), the Court explains the purpose and the value of the warrant procedure. *See id.* at 323–24. In declaring authorization of administrative inspection without a warrant or its equivalent unconstitutional, the Supreme Court stated:

> A warrant . . . would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also, *a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed. These are important functions for a warrant to perform, functions which underlie the Court's prior decisions that the Warrant Clause applies to inspections for compliance with regulatory statutes.*

*Id.* at 323–24 (emphasis added; footnotes omitted).

In § 66.431(5)(a)3, STATS., there is no requirement to demonstrate reasons for obtaining the order for

---

*Burger*, 482 U.S. 691, 702–03 (1987). Because this *Burger* exception relates to closely regulated businesses, and because the instant case does not involve closely regulated businesses, we give little weight to the argument.

entry, for entering after notice, for entering at reasonable times, nor for defining the scope of activity.[2] Uptown argues that this deficiency renders the statute unconstitutional.

RACM, in response to Uptown's claim that the statute is deficient in not limiting the discretion of the inspectors as to time, place and scope, cites *City of Melvindale v. Trenton Warehouse Co.*, 506 N.W.2d 540, 541 (Mich. Ct. App. 1993), a case that approved a statute similar to § 66.431(5)(a)3, STATS. The Michigan statute, MICH. COMP LAWS § 4(3) (1992), in part, provided that a governmental agency "may enter upon property before . . . [condemnation] for the purpose of making surveys . . . tests, soundings and borings . . . [to determine] whether the property is suitable to take for public purposes." *Melvindale*, 506 N.W.2d at 541. The issue on appeal in *City of Melvindale* was whether a public purpose had been demonstrated. *See id.* The court ruled on summary judgment that such a showing was not necessary. *See id.* What is more important for our purposes, however, is that the statute authorized a

---

[2] RACM also contends that it could have proceeded under §§ 66.122 and 66.123, STATS. It is noteworthy that §§ 66.122 and 66.123 pertain to, respectively, special inspection warrants and special inspection warrant forms. The latter statute illustrates the contents of the affidavit needed to obtain a special inspection warrant. Although not mandatory, among the contents suggested to be included in the affidavit are a description of the property, the necessity for compliance with a particular ordinance, and a brief statement of reasons for the inspection, frequency and approximate date of last inspection, if any, which shall be deemed probable cause for issuance of the warrant. Although RACM, in the alternative, claims that it had authority to proceed under these two statutes to gain entry, it did not follow this procedure. Thus, any argument in this regard is moot.

legal procedure if access was denied, whereby the governmental agency could file a complaint seeking access. *See id.* That statute provided a specific procedure mandating that the complaint must: (1) state facts making the entry necessary; (2) specify the date on which entry is sought; and (3) indicate the duration and the method proposed for protecting the defendant against damage. *See id.* Under the statute, the court may grant a limited license for entry upon such terms as justice and equity require including: (a) a description of the purpose of the entry; (b) the scope of activities that are permitted; and (c) the conditions of the entry with respect to time, place and manner of entry. *See id.* As noted, § 66.431(5)(a)3 does not provide similar specificity or require sufficient safeguards. Thus, *City of Melvindale* offers little support for RACM's position.

■

As currently written, our statute, on its face, provides no guarantee of either a minimum warrant procedure or a constitutionally adequate substitute. [3] Thus, to comport with the dictates of *Camara, See* and *Barlow*, when a property owner refuses access under the statute, and RACM exercises its right to obtain a court order authorizing entry for inspecting and test-

[3] Uptown also claims that § 66.431(5)(a)3, STATS., violates art. I, § 11 of the Wisconsin Constitution. Historically, § 11 and the Fourth Amendment have been interpreted in tandem. "The development of Wisconsin law on search and seizure parallels that developed by the United States Supreme Court." *State v. O'Brien*, 214 Wis. 2d 328, 336, 572 N.W.2d 870, 874 (Ct. App. 1997), *aff'd*, 223 Wis. 2d 303, 588 N.W.2d 8 (1999). Thus, the minimum requirements imposed on the order for entry process by this opinion shall also serve the purpose of withstanding any state constitutional challenge.

ing, the opportunity must be provided to consider the necessity of the entry, the scope of the entry, the time, place and manner of the entry. We read-in this requirement in order to construe the statute in a constitutional manner. *See State ex rel. Matalik v. Schubert*, 57 Wis. 2d 315, 327, 204 N.W.2d 13, 18–19 (1973) ("This court has previously construed deficient statutes to include constitutionally required provisions.").

Although the trial court patiently and considerately entertained the positions of all parties, we are unable to ascertain whether it considered the basic requirements set forth above prior to dissolving the injunction and granting the order for entry. As a consequence, we reverse the judgment, reinstate the injunction, and remand to the trial court to conduct a hearing in compliance with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

SCHUDSON, J. *(concurring)*. Although I agree with the majority's conclusion, I do not join in Judge Wedemeyer's opinion. Accordingly, I respectfully concur.