Gregory BETHKE, Elvera Bethke, and Melanie Bethke, Plaintiffs-Appellants,†

v.

LAUDERDALE OF LA CROSSE, INC., Lauderdale North Association, Inc., American Family Mutual Insurance Company, Richard Barbour, and Wisconsin Physicians Service Corporation, Defendants-Respondents.

Court of Appeals

*No. 99–1897. Submitted on briefs January 11, 2000.—Decided April 13, 2000.*

2000 WI App 107

(Also reported in 612 N.W.2d 332.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Gregory J. Egan* of *Parke O'Flaherty, Ltd.*, La Crosse.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert D. Johns, Jr.* of *Johns, Flaherty & Rice, S.C.*, La Crosse.

Before Eich, Vergeront and Deininger, JJ.

¶ 1. DEININGER, J. Gregory Bethke appeals a judgment dismissing his complaint against Lauderdale North Association, Inc., for damages incurred when he was injured on the grounds of the Lauderdale North condominium complex.[1] Bethke contends that the circuit court erred when it concluded that the association was a nonprofit organization immune from liability under Wisconsin's recreational immunity statute, WIS. STAT. § 895.52 (1997–98).[2] He also contends that the immunity statute, as applied on the present facts, violates the equal protection clauses of the United States and Wisconsin Constitutions, and that the association should, like a "private" property owner, lose its immu-

---

[1] Gregory's wife and daughter are also plaintiffs and appellants, but we will refer to the appellants collectively as "Bethke," except where necessary to separately identify them. Bethke's suit names four principal defendants: Lauderdale of La Crosse, Inc., Lauderdale North Association, Inc., American Family Mutual Insurance Company, and Richard Barbour. The first named corporation developed the condominium complex but "had nothing to do with" the construction of the fence at issue in this litigation. Barbour was an officer of Lauderdale North Association, Inc., and American Family was its insurer. The only dispute in this appeal involves the application of WIS. STAT. § 895.52 (1997–98) to Lauderdale North Association, Inc., and we will refer to the respondents collectively as "the association."

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

nity because it collects money for the use of the property in question. *See* § 895.52(6)(a).

¶ 2. We conclude that the association is immune from liability for Bethke's injuries as a nonprofit organization under WIS. STAT. § 895.52. We further conclude that the application of § 895.52 to the present facts does not violate Bethke's right to equal protection of the laws. Finally, we conclude that § 895.52(6)(a) has no relevance to the facts before us. Accordingly, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 3. Lauderdale of La Crosse, Inc., built the Lauderdale North condominium complex on land adjacent to the Black River in La Crosse County and sold its condominium units to individual owners. Each condominium owner is a member of the Lauderdale North Association, Inc., which is responsible for operating and maintaining the "common areas" of the complex. All members of the association are entitled to use and enjoy the common areas and are required to pay twenty-five dollars each month to the association to ensure that the grounds are maintained.

¶ 4. In 1990, Gregory Bethke purchased one of Lauderdale North's waterfront condominiums and he also acquired a boat slip on the condominium association's dock. From 1990 to 1993, Bethke went to and from his boat slip by walking across the common lawn area of the complex. In 1993, however, the association erected a wall which extended across the common area of the complex to the edge of the shoreline, interfering with Bethke's preferred route to his boat slip. After the wall was constructed, Bethke could not travel a direct route to his boat slip; to reach his boat, Bethke had to walk to the shoreline, step "on loose rocks ('riprap'),"

and "negotiate around the [end of] the wall." In May 1994, Bethke was injured while attempting to reach his boat slip in this way.

¶ 5. Bethke sued the condominium association, alleging that his injuries were caused by its negligence. The association moved for summary judgment, claiming that Bethke's suit was barred by WIS. STAT. § 895.52, Wisconsin's recreational immunity statute. The association contended that, as a nonprofit organization, it was immune from liability for Bethke's injuries under the statute. The circuit court agreed and granted the association's motion. Bethke appeals the judgment dismissing his complaint.

## ANALYSIS

¶ 6. We review the trial court's grant of summary judgment de novo, using the same methodology as the trial court. *See M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 496–97; *see also* WIS. STAT. § 802.08(2). Bethke does not contend that there are any material facts in dispute which would preclude the granting of summary judgment. His claim is that the trial court erred in its legal conclusion that the association was immune from liability on the present facts.

¶ 7. The circuit court granted the association's motion for summary judgment because it concluded that Bethke's negligence claim is barred by Wisconsin's recreational immunity statute, WIS. STAT. § 895.52. The statute, in general, immunizes a property owner from liability when a person is injured while engaging

in a recreational activity on the owner's land. *See* § 895.52(2). The statute draws distinctions, however, between different types of landowners. *See* § 895.52(3)–(6). A nonprofit organization (which is "an organization or association not organized or conducted for pecuniary profit") that owns, leases or occupies property is immune from liability so long as it does not *maliciously* act or fail to warn against an unsafe condition on the property. *See* § 895.52(1)(c) and (5). A private property owner ("any owner other than a governmental body or nonprofit organization"), however, is not immune from liability if he or she "collects money, goods, or services in payment" for the use of his or her property, and "the aggregate value of all payments received by the owner for the use of the owner's property for recreational activities during the year in which the death or injury occurs exceeds $2,000." *See* § 895.52(1)(e) and (6)(a).

¶ 8. Bethke contends first that the circuit court erred in determining that the association is a "nonprofit organization" for purposes of WIS. STAT. § 895.52. He acknowledges that the association is not organized or conducted for pecuniary profit,[3] but argues that the statute's definition is too broad because the association "is not the type of [nonprofit organization] that the legislature intended to be accorded protection by the recreational immunity statute." Bethke's argument appears to be that the term "nonprofit organization" is ambiguous and that § 895.52 should be read to grant immunity only to those types of nonprofit organiza-

---

[3] The Articles of Incorporation of Lauderdale North Association, Inc., declare that the association is organized under WIS. STAT. ch. 181 and that "[n]o part of the net earnings of the corporation shall inure to the benefit of or be distributable to any member, officer or director. . . ."

tions that act in the public interest and "gratuitously open[ ] [their] land for use by the general public." We reject this argument.

■

¶ 9. The supreme court has determined that the statute's definition of "nonprofit organization" is not ambiguous. *See Szarzynski v. YMCA, Camp Minikani*, 184 Wis. 2d 875, 889–91, 517 N.W.2d 135 (1994). The court concluded in *Szarzynski* that WIS. STAT. § 895.52(1)(c) is "clear on its face" and is "capable of one simple construction—that the organizations that are organized and/or conducted for purposes other than profit-making are eligible for recreational immunity under the statute." *Id*. at 890. The association asserts that it meets the statutory definition of a "nonprofit organization" because it is "not organized or conducted for pecuniary profit." (See footnote 3, above.) We agree. Under the plain language of § 895.52(1)(c) and the supreme court's discussion in *Szarzynski*, the association is a "nonprofit organization" for purposes of the recreational immunity statute.[4]

---

[4] Bethke urges us to go beyond the language of the statute and to consider the legislative history of WIS. STAT. § 895.52. He contends that legislative history renders the term "nonprofit organization" ambiguous. In particular, Bethke calls our attention to 1983 Wis. Act 418, which created § 895.52. The act contains a statement of "legislative intent" which provides:

> The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit.

*See* 1983 Wis. Act 418, § 1. According to Bethke, this language establishes that the legislature intended to grant recreational immunity only to nonprofit organizations that "gratuitously" open their land "for use by the general public." Because we have

110

¶ 10. Bethke next contends that the association does not satisfy the statutory definition of "owner" because it does not own, lease or occupy the property on which he was injured. *See* WIS. STAT. § 895.52(1)(d)1. Bethke's challenge to the association's status as "owner" is twofold: (1) as we have noted above, he argues that an "owner" must gratuitously open his or her land to the public in order to qualify for recreational immunity, and (2) he contends that the condominium association does not "own" the land on which Bethke was injured because the common areas of the Lauderdale North condominium complex are actually owned by the condominium unit owners themselves.

██

¶ 11. Bethke's first argument was explicitly rejected in *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 547 N.W.2d 602 (1996). The supreme court determined in *Verdoljak* that the recreational immunity statute "does not require an owner to 'open' his or her lands in order to be afforded immunity. . . ." *Id.* at 628. The court concluded that the meaning of WIS. STAT. § 895.52 is " 'straightforward and plain' " and " 'does not purport to condition [a limit of liability] to owners who open their land to those who use it for recreational activities.' " *Id.* at 631 (citation omitted). The court further explained that "[t]he focus is on the

___

already concluded that the meaning of "nonprofit organization" can be discerned from the plain language of § 895.52, however, we do not consider the statute's legislative history or other extrinsic factors. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996) (holding that when the plain language of a statute clearly sets forth the legislature's intent, we need look no further and should instead simply apply the statute's language to the facts and circumstances before us).

activity of the person who enters and uses the land, not upon any obligation on the part of the owner to affirmatively demonstrate that the land is open." *Id.* We conclude that *Verdoljak* clearly disposes of Bethke's first argument, and we therefore turn to his second.

¶ 12. Bethke argues that the association does not "own" the property on which he was injured and thus the association cannot be immune under WIS. STAT. § 895.52. Bethke contends that the association merely "operates as a property manager who provides a service for its members for a fee." We note that § 895.52(1)(d) defines "owner" broadly to include those who lease or occupy property, and that this court has defined "occupant" as "one who has the actual use of property without legal title, dominion or tenancy." *See Hall v. Turtle Lake Lions Club*, 146 Wis. 2d 486, 490–91, 431 N.W.2d 696 (Ct. App. 1988) (adopting the definition of "occupant" set forth in *Smith v. Sno Eagles Snowmobile Club, Inc.*, 823 F.2d 1193, 1197 (7th Cir. 1987)).

¶ 13. The association's Articles of Incorporation provide that "[t]he corporation is formed to provide for the maintenance, preservation and control of the common area [of the Lauderdale North Condominiums]," and the association's By-Laws state that they are intended "to provide the structure necessary for the operation and maintenance of the Common Elements of the Condominium. . . ." We conclude that, even though each individual unit owner holds title to an undivided interest in the common areas, the association is nonetheless an "occupant" of the common areas of the Lauderdale North complex because it has "actual use" of the property. *See, e.g., Smith v. Sno Eagles Snowmobile Club, Inc.*, 823 F.2d at 1197–98 (holding

112

that two nonprofit organizations that were responsible for maintaining and grooming snowmobile trails had "actual use" of the property and were "occupants" under Wisconsin's recreational immunity statute). As an occupant of the common areas of the Lauderdale North condominium complex, the association is an "owner" of the property for purposes of WIS. STAT. § 895.52.

¶ 14. Bethke next contends that under the trial court's interpretation of WIS. STAT. § 895.52, the statute violates the equal protection clauses of the United States and Wisconsin Constitutions. Specifically, although Bethke concedes that the legislature may have rationally elected to treat *some* nonprofit organizations differently than private landowners, he argues that the legislature had no rational basis for treating "non-charitable" nonprofit organizations differently than private property owners. In other words, according to Bethke, the recreational immunity statute is unconstitutional as applied to persons injured on property owned by nonprofit organizations like the present association which further no charitable purposes.

¶ 15. The constitutionality of the application of a statute raises a question of law which we review de novo. *See Redevelopment Auth. of the City of Milwaukee v. Uptown Arts and Educ., Inc.*, 229 Wis. 2d 458, 462, 599 N.W.2d 655 (Ct. App. 1999). Statutes are presumed to be constitutional and will be upheld unless the party challenging the statute shows that it is unconstitutional beyond a reasonable doubt. *See State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989). In the absence of a "fundamental right" or a "suspect class," when a statute faces an equal protection challenge, we apply a rational basis test and

consider whether the statute creates a classification that is irrational or arbitrary. *See City of Kenosha v. Leese*, 228 Wis. 2d 806, 809, 598 N.W.2d 278 (Ct. App. 1999). A classification violates equal protection only if it rests " 'on grounds wholly irrelevant to the achievement of the State's objective.' " *See Schmidt v. City of Kenosha*, 214 Wis. 2d 527, 538, 571 N.W.2d 892 (Ct. App. 1997) (citation omitted).

¶ 16. Bethke's constitutional argument springs from certain language in *Szarzynski v. YMCA, Camp Minikani*, 184 Wis. 2d 875, 517 N.W.2d 135 (1994), where the supreme court considered an equal protection challenge closely akin to the one before us. The plaintiff in *Szarzynski* argued that WIS. STAT. § 895.52 is unconstitutional because the statute distinguishes between persons injured on property owned by a nonprofit organization and persons injured on property that is not owned by a nonprofit organization, a distinction for which the legislature had no rational basis. *See id.* at 886–87. The court concluded that the statute was constitutional because a rational basis existed for the classification. The court's conclusion was based in part on the following language from the circuit court's decision:

> [A] nonprofit organization may profit monetarily from [charging admission], *but the profit is intended and must benefit the charitable purposes for which it was formed.*
>
> There are good public policy reasons for limiting the liability of nonprofit organizations more so than governmental or private interests. The main reason is that a nonprofit organization does not normally have the kind of money that the latter typically have to cover expenses. In any event, to the extent it generates funds, *it is for the pur-*

*poses–the charitable purposes–for which it is formed.*

*Id.* at 888 (emphasis added).

¶ 17. Relying on the quoted language, Bethke suggests that the holding of *Szarzynski* is narrow and does not reach the facts now before this court. According to Bethke, *Szarzynski* held only that there is a rational basis for granting recreational immunity to *charitable* nonprofit organizations, and the supreme court did not consider whether the legislature could rationally choose to extend broader immunity to other types of nonprofit organizations than that afforded to private property owners. We conclude, however, that the supreme court's holding in *Szarzynski* does not distinguish between charitable nonprofit organizations and non-charitable nonprofit organizations, and thus, Bethke's equal protection challenge must fail.

¶ 18. Although the court in *Szarzynski* recognized the defendant organization's charitable nature when it conducted its equal protection analysis, this was only one of the factors the court cited in concluding the legislature had a rational basis for distinguishing between nonprofit organizations and for-profit organizations. The court pointed to an additional factor that distinguishes nonprofit organizations from for-profit organizations: nonprofits are not formed for the purpose of making a pecuniary profit, and they do not distribute their earnings to their members, officers or directors. Thus, unlike for-profit entities, nonprofit organizations do not generally accumulate large earnings and do "not normally have the kind of money [that for-profit organizations have] to cover expenses." *Id.* at 888–90. Moreover, the court recognized that in order for a legislative distinction to be upheld as rational, a "perfect fit" is not required; "[t]he fact that any given

nonprofit organization may derive more than a minimal pecuniary benefit from a particular recreational activity does not imperil the rule." *Id.* at 888–89 (citing *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) ("[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.")).

¶ 19.　In short, the supreme court did not imply in *Szarzynski* that its conclusion would have been different if the defendant organization before it had *not* been formed for "charitable purposes." We are unwilling to read such a limitation into the court's holding, and thus conclude that Bethke's equal protection challenge to the treatment of nonprofit organizations under WIS. STAT. § 895.52 must fail.

¶ 20.　Finally, Bethke contends that "[t]he exception set forth in [WIS. STAT. § ] 895.52(6)(a) precludes granting immunity to [the association]." That paragraph precludes immunity where a property owner collects money for the use of property, and the total payments received for recreational activities on the land exceeds $2,000 per year. Section 895.52(6)(a), however, pertains only to a "private property owner," which is defined as "any owner other than a governmental body or nonprofit organization." *See* § 895.52(1)(e). As we have discussed, the trial court did not err in concluding that the association is entitled to the immunity extended to nonprofit organizations under § 895.52, and thus, the exception Bethke advocates has no relevance to this dispute.

## CONCLUSION

¶ 21. For the reasons discussed above, we affirm the judgment of the circuit court dismissing Bethke's complaint.

*By the Court.*—Judgment affirmed.