Nelly DE LA TRINIDAD, Individually,
and as Special Administrator of the
Estate of Elizabeth Callejas-De La Trinidad,
Deceased, and Victor Leonardo Aguilar-
Hernandez, and Luz Maria Torres-Sanches,
Individually, and as Special Administrator of the
Estate of Marisol Aguilar-Torres, Deceased,
Plaintiffs-Appellants-Petitioners,

v.

CAPITOL INDEMNITY CORPORATION,
a Wisconsin Insurance Corporation,
Halter Wildlife, Inc., and Rachel Proko,
Defendants-Respondents.

Supreme Court

*No. 2007AP45. Oral argument November 4, 2008.
—Decided January 23, 2009.*

2009 WI 8

(Also reported in 759 N.W.2d 586.)

For the plaintiffs-appellants-petitioners there were briefs by *Patrick O. Dunphy, Robert D. Crivello,* and *Cannon & Dunphy, S.C.,* Brookfield, and oral argument by *Robert D. Crivello.*

For the defendants-respondents there were briefs by *James S. Smith, Wendy G. Gunderson,* and *Smith, Gunderson & Rowen, S.C.,* Brookfield, and oral argument by *Wendy G. Gunderson.*

¶ 1. N. PATRICK CROOKS, J. Petitioners Nelly De La Trinidad, Victor Leonardo Aguilar-Hernandez, and

327

Luz Maria Torres-Sanches (collectively, De La Trinidad) are the parents of two children who drowned in a pond on the grounds of Halter Wildlife, Inc. De La Trinidad seeks review of an unpublished court of appeals opinion[1] affirming a circuit court order that dismissed their lawsuit against Halter Wildlife, Inc. (Halter); its insurer, Capitol Indemnity Corporation; and lifeguard Rachel Proko, an employee of Halter, on the grounds that the recreational immunity statute[2] applies and bars a suit under these circumstances.

¶ 2.   The sole question before us is whether Halter is "an organization or association not organized or conducted for pecuniary profit" under Wis. Stat. § 895.52(1)(c) and as such entitled to immunity from liability for negligence, as well as for safe place violations, for any deaths occurring during recreational activity on Halter's land.[3] De La Trinidad contends that Halter cannot be a nonprofit organization for two reasons: first, because it was incorporated in 1984 under the statute that since 1953 has governed for-profit corporations; and second, because it supplemented membership dues with revenues from other

---

[1] *Nelly De La Trinidad v. Capitol Indem. Corp.*, No. 2007AP45, unpublished slip op. (Wis. Ct. App. Jan. 23, 2008).

[2] Wis. Stat. § 895.52 (2005–06). All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

[3] Because the statute also grants immunity to the employees and agents of nonprofit landowners, and because Proko is being sued in her capacity as an employee of Halter, the resolution of this question affects the claims against Proko as well. "[N]o owner and no officer, employee or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property. . . ." Wis. Stat. § 895.52(2)(b).

activities—revenues that created a budget surplus or profit which in turn meant dividends for members in the form of dues that were lower than they would otherwise have been. Halter argues that its articles of incorporation show that it was organized as a nonprofit, and its financial records and its status with the Internal Revenue Service (IRS) and the Wisconsin Department of Financial Institutions (DFI) show that it is not conducted for profit and has never paid any dividends.

¶ 3.  The recreational immunity statute does not define nonprofits by referencing the chapter under which they were incorporated, either chapter 180 or 181, so that factor is not dispositive of the question. We see no basis in the statute for defining "profit" as broadly as De La Trinidad urges. Halter's articles of incorporation, tax returns, and financial statements make clear that it was organized and is conducted as a nonprofit organization, a fact recognized by both Wisconsin and the federal government. For these reasons, explained more fully below, Halter is a nonprofit organization as defined by the statute and is thus entitled to immunity.

¶ 4.  We therefore affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 5.  Though it filed restated articles of incorporation in 1984 and 1988 which varied in some respects from the original articles, Halter has since its inception consistently defined itself as a nonprofit stock corporation under ch. 180 of the Wisconsin Statutes. These articles and successive restated articles of incorporation were accepted for filing by the secretary of state. The current articles of incorporation describe Halter as a

hunt and sportsman club with the purpose of promoting wetlands preservation and environmental education. Its regulations allow its approximately 275 dues-paying members to invite guests[4] to events held on the club's grounds, which include a clubhouse, a picnic area, a ball park, and a beach and pond used for fishing and swimming. In addition to annual membership dues, Halter collects extra fees from members who host picnics and other events to which guests are invited.

¶ 6. It was at one such event, a company picnic hosted on July 13, 2002, by Finishing and Plating Services (FPS) of Kenosha,[5] that the tragic drownings of the two children occurred.

¶ 7. De La Trinidad filed this lawsuit, alleging negligence and safe place violations by Halter, and negligence by Proko. The Kenosha County Circuit Court, the Honorable David Bastianelli presiding, granted summary judgment for the defendants. The circuit court noted that despite Halter's organization under ch. 180[6] as a nonprofit stock corporation, all of the documentation of its existence, from its articles of incorporation to its tax returns, supported the conclusion that it was organized as a nonprofit. The circuit

---

[4] The general public does not have access to Halter's facilities; only club members and their guests may be on the property. Payment of invoices or statements is required under the organization's regulations to be made by a member's check.

[5] The picnic guests were not charged admission; in keeping with Halter's regulations, FPS, which held a corporate membership with Halter, paid the invoice for the picnic.

[6] The present version of ch. 180 of the Wisconsin Statutes governs "Business Corporations," which include those issuing stock. Wis. Stat. § 180.0103(5). The present version of ch. 181 governs "Nonstock Corporations," which are defined as including nonprofit corporations. Wis. Stat. § 181.0103(5).

330

court also concluded that under the statute's definition, Halter's fund-raising activities did not make it a for-profit corporation, noting that the record showed no distributions of profits or earnings to members. The court of appeals affirmed, pointing out that the recreational immunity statute does not define nonprofit with reference to the chapter under which the organization is incorporated. The court of appeals also found that Halter's nonprofit status turned not on how funds were generated, but rather on how they were used. It noted, "[M]ost importantly, Halter is not organized to distribute profits to anyone, and it does not do so." *Nelly De La Trinidad v. Capitol Indem. Corp.,* No. 2007AP45, unpublished slip op., ¶ 15 (Wis. Ct. App. Jan. 23, 2008). For those reasons it affirmed the circuit court. De La Trinidad petitioned this court for review, and on May 13, 2008, review was granted.

## II. STANDARD OF REVIEW

¶ 8. The application of a statute to undisputed facts is reviewed de novo. *DOR v. Menasha,* 2008 WI 88, ¶ 44, 311 Wis. 2d. 579, 754 N.W.2d 95.

## III. DISCUSSION

¶ 9. The question we address is whether Halter was a nonprofit organization under the recreational immunity statute[7] and is therefore entitled to immu-

---

[7] Wisconsin Stat. § 895.52(2):

No duty; immunity from liability. (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

nity from liability for negligence, as well as for the claimed safe place violations. Nonprofit organizations are among the types of property owners to whom immunity is extended under the statute.[8]

¶ 10.   We begin of course with the statute's definition of a nonprofit organization as "an organization or association not organized or conducted for pecuniary profit." Wis. Stat. § 895.52(1)(c). We address each prong in turn:   how Halter is organized and how it is conducted.[9]

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115(2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property . . . .

Subsections (3) to (6) do not apply in this case. They deal with government property, malicious acts, and private property owners who collect fees for recreational use of the land in excess of $2,000 per year.

There is no dispute here either as to the ownership of the land or as to the recreational nature of the activity.

[8] Wisconsin Stat. § 895.52(1),(c) and (d):

(c) "Nonprofit organization" means an organization or association not organized or conducted for pecuniary profit.

(d) "Owner" means either of the following:

1. A person, including a governmental body or nonprofit organization, that owns, leases or occupies property. . . .

[9] Wisconsin Stat. § 895.52(1)(c) uses the wording "not organized or conducted for pecuniary profit," which can be read as intending to mean both prongs would have to be met (as in, "neither organized nor conducted for pecuniary profit") or as

## A. "Not organized . . . for pecuniary profit"

¶ 11.   De La Trinidad's contention that Halter is organized for pecuniary profit centers on the fact that, as Halter's restated articles of incorporation provide, it is organized as a stock-issuing corporation "pursuant to the authority and provisions of Chapter 180 of the Wisconsin Statutes." De La Trinidad contends that this means it is by definition a for-profit—or at best a corporation masquerading as a nonprofit while reserving the legal right to convert to for-profit whenever it chooses—regardless of what its articles of incorporation currently say.

¶ 12.   Halter argues that the question of whether it is organized for pecuniary profit is answered by the statement of purpose in its articles of incorporation: "The corporation will be a non-profit corporation which is to be formed not for private profit but exclusively for educational, benevolent, fraternal, social and athletic

---

intending to mean that at least one prong would have to be met (as in, "not organized or not conducted for pecuniary profit").

Yet, in *Szarzynski,* this court has called the language "clear on its face and capable of one simple construction—that the organizations that are organized and/or conducted for purposes other than profit-making are eligible for recreational immunity under the statute." *Szarzynski v. YMCA,* 184 Wis. 2d 875, 890, 517 N.W.2d 135 (1994). Neither party argues that Wis. Stat. § 895.52(1)(c) may be interpreted in the conjunctive or disjunctive, and it is not necessary for us to consider the question here. Halter does not argue that because it was either organized or conducted as a nonprofit, it was entitled to immunity. Rather, it argues that it met both requirements. We recognize that the "and/or" construction often can be problematic. *See, e.g.,* Wisconsin Bill Drafting Manual § 2.01(9)(a) (2009–10) ("Never use the compound 'and/or.' 'And' is conjunctive and 'or' is disjunctive; decide whether you mean 'and' or 'or' and use the proper word.").

purposes within the meaning of Section 501(c)(7) of the Internal Revenue Code of 1954 . . . ." The articles of incorporation, Halter argues, are consistent with its status with the federal and state governments: the Department of the Treasury granted it tax exempt status under § 501(c)(7) of the Internal Revenue Code, and the state Department of Financial Institutions has confirmed that it has operated since its inception as a nonprofit. Halter points to our decision in *Szarzynski v. YMCA*, 184 Wis. 2d 875, 890, 517 N.W.2d 135 (1994), in which we cited the definition provided in Black's Law Dictionary for the term "nonprofit corporation." That definition made explicit reference to the federal tax code[10] and included corporations "no part of the income of which is distributable to its members, directors or officers." *Id.* at 890 (quoting *Black's Law Dictionary* 1056 (6th ed. 1990)). Because it distributes no income to members, directors or officers and because it is a nonprofit for purposes of federal taxation, Halter argues that it is organized as a nonprofit.

¶ 13.  A brief summary of the history of chapters 180 and 181 will help make sense of the parties' arguments. Prior to 1953, it was not unusual for Wisconsin organizations to be incorporated as nonprofit stock corporations under ch. 180. There was a change in the statute, however, that took effect that year and remained in effect at the time of Halter's incorporation, and it is not entirely clear whether by that change, the legislature intended to continue to permit nonprofit

---

[10] In fact, part of the dictionary's definition of "nonprofit corporation" not quoted in *Szarzynski* refers readers to I.R.C. § 501(c) "for a list of exempt organizations." *Black's Law Dictionary* 1056 (6th ed. 1990). The clear inference from that definition is that it intends to define all § 501(c) organizations as nonprofit corporations.

stock organizations under ch. 180. De La Trinidad relies on a 1958 opinion of the attorney general that examined the statute and concluded otherwise: "[A] nonprofit stock corporation cannot be lawfully organized under ch. 180 subsequent to July 1, 1953 . . . ." 47 Wis. Op. Att'y Gen. 78, 81 (1958).

¶ 14. As even that attorney general's opinion acknowledged, however, it is difficult to reconcile several provisions of the statute.[11] One provision, for example, defines "corporation" as including "a corporation with capital stock but not organized for profit." Wis. Stat. § 180.02(1) (1957). Another appears to contemplate nonprofits organized under ch. 180 even after 1953: "After June 30, 1953 ch. 180 shall apply to all domestic corporations with capital stock, *regardless of when they were organized and whether for profit or not . . . .*" Wis. Stat. § 180.97(1) (1957) (emphasis added). However, that same section contains a provision that refers only to nonprofits formed prior to 1953, and is silent as to nonprofits formed thereafter: "any domestic corporation with capital stock but not organized for profit which has *before July 1, 1953, been organized* under the general corporation laws . . . shall be subject to ch. 180 only to the extent that the provisions of ch. 180 are not inconsistent with the articles or form of organization of such corporation . . . ." *Id.* (emphasis added).

¶ 15. The attorney general's 1958 opinion in response to a query from the secretary of state acknowledged that the statute "does say that there can be such a thing as a corporation with capital stock but not

---

[11] The opinion noted, "It would have been much more explicit if the legislature had stated plainly that no stock nonprofit corporations are to be organized under ch. 180 after July 1, 1953." 47 Wis. Op. Att'y Gen. 78, 81 (1958).

organized for profit." 47 Wis. Op. Att'y Gen. at 80. The opinion also said Wis. Stat. § 180.97(1) "leaves the door wide open for nonprofit stock corporations" because the language in that section is "about as all-embracing as human draftsmanship can devise." *Id.* Nevertheless, in light of an absence of any language in Wis. Stat. § 180.97(1) (1957) about post-1953 stock nonprofits, the attorney general advised that absent explicit statutory authority, the secretary of state "would be justified in finding that the proposed articles [for a nonprofit stock] do not conform to law." *Id.* at 81.

¶ 16.   De La Trinidad urges us to adopt the reasoning of that attorney general's opinion and reach the same conclusion concerning Halter's articles of incorporation. Of course, we are not bound to do so. " 'An Attorney General's opinion is only entitled to such persuasive effect as the court deems the opinion warrants.' " *State v. Gilbert,* 115 Wis. 2d 371, 380, 340 N.W.2d 511 (1983) (quoting *Hahner v. Bd. of Educ.,* 89 Wis. 2d 180, 192, 278 N.W.2d 474 (Ct. App. 1979)). In this case, the opinion does not warrant great persuasive effect; it candidly acknowledges broad language in the statute, for example, that leads to the opposite conclusion. However, even if the attorney general's opinion was correct as to ch. 180 nonprofits, it merely concluded that the secretary of state "would be justified" in rejecting articles of incorporation for such an organization.[12]

---

[12] Even if the secretary of state erred in permitting a nonprofit to organize under ch. 180 rather than requiring it to organize under ch. 181, it does not follow that such an error alone would convert Halter into a for-profit organization. The court of appeals accordingly held that "whether Halter's form of organization is lawful or not is not the issue in this case." *De La Trinidad,* No. 2007AP45, unpublished slip op., ¶ 8. We agree.

¶ 17.  Which brings us to a key point: notwith-standing the attorney general's opinion on the matter, there is no dispute that the secretary of state did accept and file Halter's articles of incorporation and restated articles of incorporation. Three times. From the repeated filing and acceptance it is reasonable to infer that the acceptance was intentional and that the secretary of state saw no legal impediment to Halter's incorporation as a nonprofit under ch. 180.[13] Under Wis. Stat. § 180.0203(2), filing of the articles of incorporation by the DFI "is conclusive proof that the corporation is incorporated under this chapter . . . ."

¶ 18.  That the State of Wisconsin accepted Halter's incorporation on those terms is verified by the certified document from the secretary of state that confirmed the filing in 1988. It is also confirmed by a 2005 letter from the DFI, which, in response to a letter from Halter about the organization's status and designation on the DFI online database, stated:

> Regarding your written request involving the corporate status of Halter Wildlife, Inc. I have examined the records for this corporation and have determined that you are correct in that this entity has, *since its inception,* been a "stock, not-for-profit corporation.["] Unfortunately, when our database was created we did not set forth a specific "status code" for "stock, not-for-profit" entities. Therefore, *although it is a not-for-profit entity,* it was included with all other corporations *formed*

---

[13] It is clear that a different policy was in effect in 1958 in the secretary of state's office; the attorney general's opinion from that year makes reference to the fact that the office at that time was "refus[ing] to accept such articles for filing[.]" 47 Wis. Op. Att'y Gen. at 79.

*under Chapter 180* having a status code of "01" which reflects the entity as a business corporation on our records. [Emphasis added.]

¶ 19. A second, related argument made by De La Trinidad is that an organization formed under ch. 180 cannot be a nonprofit because there is nothing in the law governing it that prevents Halter's members from voting to amend its articles and becoming a for-profit corporation. De La Trinidad notes that Halter's articles of incorporation allow the organization to "engage in lawful activity within the purposes for which corporations may be organized under the Wisconsin Business Corporation Law." Because it was organized under ch. 180, which allows for the distribution of profits to shareholders under Wis. Stat. § 180.0640, De La Trinidad argues that Halter left open the possibility of distributions to shareholders.

¶ 20. De La Trinidad cites language from two cases from other jurisdictions in support of the proposition that the mere potential for for-profit conduct should preclude defining Halter as a nonprofit. Both involve organizations that unsuccessfully sought tax exemption by claiming to be nonprofit organizations. *Ukranian National Urban Renewal Corp. v. Director, Division of Taxation,* 3 N.J. Tax 326 (1981), is easy to distinguish, however, from this case; it turned on the fact that "[t]he organizational focus of this tax exemption statute is on the statute *pursuant to which the taxpayer was organized* and whether stock was authorized." *Id.* at 331 (emphasis added). In other words, the statute at issue there defined a nonprofit in exactly the way the recreational immunity statute does *not:* pursuant to the *statute under which* the property owner is organized. The second case, *Produce Exchange Stock*

338

*Clearing Association, Inc. v. Commissioner of Internal Revenue,* 27 B.T.A. 1214, 1219 (1933), is cited for the proposition that a corporation cannot use the fact that dividends have never been paid to claim nonprofit status, when it has retained a legal ability to do so. The case concerned whether the plaintiff was tax-exempt under a statute exempting "business leagues," which functioned like chambers of commerce. Thus, the central determination was that the plaintiff did not meet the statutory definition of a business league and was therefore not tax-exempt. The language cited by De La Trinidad was an afterthought. ("Although up to the present time the petitioner has not paid any dividends to its stockholder, the New York Produce Exchange, there appears to be no reason under the law why it could not amend its by-laws and pay dividends to its sole stockholder." *Id.* at 1219.) Further, on appeal, the Second Circuit Court of Appeals limited its ruling solely to the "business league" question and expressly declined to reach the remainder of the questions. *See Produce Exch. Stock Clearing Ass'n, Inc. v. Helvering,* 71 F.2d 142, 144 (2d Cir. 1934). In short, for the reasons noted, neither of these cases are as persuasive as De La Trinidad argues.

¶ 21. While the "potential for profit" argument may have some merit, it is essentially an argument that it is not good public policy to provide immunity under Wis. Stat. § 895.52 to a nonprofit corporation that has, by incorporating under ch. 180, left open legal avenues for a later change to a for-profit corporation. In other words, it can be argued that the better policy is for the benefits afforded to nonprofits under the statute to accrue only to those nonprofits that are, by virtue of their incorporation under ch. 181, committed to staying a nonprofit. It is significant, however, that the legisla-

339

ture did not choose to define nonprofits in Wis. Stat. § 895.52 with reference to the statute under which they were incorporated.[14]

█

¶ 22. Having established that incorporation under ch. 180 does not preclude Halter from being organized as a nonprofit, we arrive at the question of what makes a nonprofit a nonprofit. A leading treatise says the articles of incorporation are the place to focus, and it bolsters our view that the chapter under which Halter is organized is not dispositive here (note especially the second sentence):

> In order to determine the purpose for which a corporation was created, courts will primarily refer to the stated purpose in the articles of incorporation. . . . A recitation in the articles of incorporation that an organization is organized under a particular statute is not dispositive of the nature of the organization; instead, a corporation's statement of purpose in its articles determines the corporation's true nature.

1A Carol A. Jones & Britta M. Larsen, *Fletcher Cyclopedia of the Law of Private Corporations* § 139 (citing *State v. Delano Cmty. Dev. Corp.*, 571 N.W.2d 233 (Minn. 1997)).

█

¶ 23. We thus turn to the substantive provisions of Halter's restated articles of incorporation, and we see they:

- explicitly define Halter as a nonprofit;

---

[14] We note that in some other cases, the legislature has defined nonprofit organization in those terms. *See, e.g.,* Wis. Stat. § 26.40(1c) (referencing "a nonprofit corporation, as defined in s. 181.0103(17)").

340

- forbid income to inure to the benefit of any trustee, director or officer;

- forbid dividends or distributions to be made to stockholders or members;

- limit Halter to activities permissible to a particular type of nonprofit, § 501(c)(7) organizations; and

- provide for its assets to be turned over to a public body or another nonprofit in the event of its dissolution.

¶ 24. As noted above, this court has said that organizations that are organized "for purposes other than profit-making" are eligible for recreational immunity under the statute. *Szarzynski,* 184 Wis. 2d at 890.

¶ 25. The most recent restated articles of incorporation for Halter are those filed with the Office of the Secretary of State in 1988.[15] They were the documents in effect at the time of the drownings in 2002. They state in part:

---

[15] We take judicial notice of the 1988 Restated Articles of Incorporation as we are authorized to do under Wis. Stat § 902.01(2)(b), which provides that "A judicially noticed fact must be . . . [a] fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Wis. Stat. § 902.01(3) and (6) provide "[a] judge or court may take judicial notice, whether requested or not[]" and "[j]udicial notice may be taken at any stage of the proceeding." *See Gupton v. City of Wauwatosa,* 9 Wis. 2d 217, 101 N.W.2d 104 (1960) (taking judicial notice of articles of incorporation recorded in the office of the secretary of state). The briefs filed with this court quoted the 1984 version and the record included only 1984 versions of the articles of incorporation. The 1988 articles of incorporation were not included despite the fact that references were made to them in documents in the record (e.g., in a letter attached to an affidavit filed by respondents and in a brief filed with the circuit court by De La Trinidad). This error was not cleared up until after oral arguments. Because the 1988

The purpose of this corporation is to engage in lawful activity within the purposes for which corporations may be organized under the Wisconsin Business Corporations Law. The corporation will be a non-profit corporation which is to be formed not for private profit but exclusively for educational, benevolent, fraternal, social and athletic purposes within the meaning of Section 501(c)(7) of the Internal Revenue Code of 1954 and in this connection, to promote a hunt and sportsman club, to preserve the environment in its natural setting and to promote education of citizens and youth as to the need to conserve and retain wetlands and adjacent uplands in a natural state . . . .

¶ 26. Additional relevant provisions reiterate the nonprofit nature of the organization:

ARTICLE IV: The corporation *has not been formed for pecuniary profit or financial gain,* and *no part of the assets, income or profit of the corporation is distributable to, or inures to the benefit of, its officers or directors,* except to the extent permitted under Wisconsin law. . . . Notwithstanding any other provision of this certificate, the corporation shall not carry on any other activities not permitted to be carried on *by a corporation exempt from federal income tax under Section 501(c)(7)* of the Internal Revenue Code of 1954, (or the corresponding provisions of any future United States Internal Revenue law).

. . . .

ARTICLE VIII: *No part of the income of the corporation shall inure to the benefit of any trustee, director or officer of the corporation,* except that reasonable compensation may be paid for services rendered to or for the corporation affecting one or more of its purposes. In the event of liquidation of the assets of the corporation

articles of incorporation are the relevant articles, there is no need to address the earlier versions.

342

any assets available for distribution at the time of such liquidation shall be turned over to an educational, benevolent, fraternal, social, scientific, religious or athletic association within the meaning of Section 501(c)(7) of the Internal Revenue Code of 1954, or to a public body. *Furthermore, no dividends or distributions shall be made to stockholders or members of the corporation during its existence and that upon its liquidation the stockholders or members may receive back no more than their original investment.*

(Emphasis added.)

¶ 27. The language of the articles of incorporation is clear. It directly prohibits distributions to members, trustees, directors and officers, and covers the liquidation of the organization's assets at dissolution. De La Trinidad asserts, rather incredibly, that the articles of incorporation are irrelevant to the determination of whether Halter was organized for profit. We cannot agree. It is clear beyond any doubt that Halter's relevant organizing documents establish an organization with a purpose other than profit-making. As to De La Trinidad's argument about Halter's ability under ch. 180 to amend the articles, that ability would become relevant only at the point the organization chose to do so. The immunity extended to nonprofit organizations under Wis. Stat. § 895.52, in other words, continues to extend to Halter unless it amends its articles to allow for a purpose of achieving pecuniary profit.

B. "Not . . . conducted for pecuniary profit"

¶ 28. De La Trinidad's second argument, that Halter does not qualify for immunity under the statute because it is conducted for pecuniary profit, depends on a sort of "penny saved is a penny earned" definition of

profit. This argument is based on the fact that Halter operated in the black, taking in more revenues than it required for operating expenses; the fact that not all the revenue was from membership dues; and the fact that the income of the organization was therefore distributed, albeit indirectly, to the members, just as if dividends had been paid. This is because those additional fees ultimately reduce the membership dues, De La Trinidad argues; the difference between what the dues are and what they would be without the additional revenues is, according to this argument, the individual member's dividend.

¶ 29.   Halter argues that profits from picnics do not affect its immunity because they were returned to the organization, not distributed to members. The relevant inquiry, Halter argues, is whether it made distributions to directors, officers, or members, and its financial statements and tax returns make clear that it never has done so. Halter further points out that De La Trinidad's approach, limiting nonprofit status to those organizations operating at a deficit, is unworkable and undesirable.

¶ 30.   De La Trinidad's arguments rest on broad definitions of the terms "profit" and "distribution." In support of its position, De La Trinidad cites language from *State ex rel. Troy v. Lumbermen's Clinic,* 58 P.2d 812 (Wash. 1936), a case having to do with a corporation that the state believed had falsely incorporated as a nonprofit while operating as a for-profit. In finding for the state, the court there defined profit thus: "Profit does not necessarily mean a direct return by way of dividends, interest, capital account, or salaries. . . . [I]n considering . . . the question of whether or not respondent is or is not operated for profit, money saved is money earned." *Id.* at 816. This holding is at quite a

variance from a standard legal definition of "profit," as found in Black's Law Dictionary: "The excess of revenues over expenditures in a business transaction; GAIN (2). Cf. EARNINGS; INCOME." *Black's Law Dictionary* 1246 (8th ed. 2004). There is nothing in the statute that would support such an expansive definition of the word "profit."[16]

¶ 31.  De La Trinidad also relies on *St. John's Military Academy v. Larson,* 168 Wis. 357, 170 N.W. 269 (1919), for the proposition that when an organization operates in the black, it "materially enhance[s] the value of its capital stock, resulting in a pecuniary profit to the shareholders." *Id.* at 361. As the underlying facts of the case make clear, it was not the indirect enhancement of the stock that made St. John's Military Academy a for-profit organization; it was the fact that it was organized as a profit-sharing corporation and had in two prior years declared a dividend on its stock.

¶ 32.  De La Trinidad's arguments are unavailing. To adopt them would, with the stroke of a pen, convert innumerable nonprofits in Wisconsin to for-profit enterprises by virtue of the fact that their bills are paid and they have money in the bank. Such a rule would operate to strip any solvent § 501(c)(7) organization of its nonprofit status. In fact, neither case compels the outcome that De La Trinidad seeks. First, *St. John's* is

---

[16] "When giving a statute its plain and ordinary meaning, courts refer to dictionaries to define those terms not defined by the legislature. Wisconsin Stat. § 990.01(1) provides that '[a]ll words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning.' " *Rouse v. Theda Clark Med. Ctr., Inc.,* 2007 WI 87, ¶ 21, 302 Wis. 2d 358, 735 N.W.2d 30 (citation omitted).

a case about a for-profit organization in the first place. In *St. John's* this court noted that the school's "articles of incorporation show that it is organized to conduct a private enterprise upon the plan of a profit-sharing corporation . . . ." *St. John's,* 168 Wis. 2d at 361. Further, the case shows that "in 1900 and 1901 it declared a small dividend on its stock." *Id.* at 360. In contrast, Halter's articles of incorporation explicitly describe the organization as a non-profit, and there is no allegation that cash distributions have ever been made to members.

¶ 33.   De La Trinidad's "indirect benefits" argument is unsupported by Wisconsin case law. So long as no profits are distributed to members, the fact that members may obtain other benefits from an organization is no bar to its nonprofit status. That this is the law in Wisconsin is made clear from a reading of *Bethke v. Lauderdale of La Crosse, Inc.,* 2000 WI App 107, ¶ 13, 235 Wis. 2d 103, 612 N.W.2d 332. In *Bethke,* the plaintiff challenged the condo association's status as a nonprofit organization and its entitlement to immunity under the recreational immunity statute. The basis for the challenge was, among other things, that the statute was unconstitutional when it protected property owners who were nonprofit organizations that further no charitable purposes. There the sole purpose for the revenues raised (in that case, monthly fees from each member) was "to provide for the maintenance, preservation and control of the common area [of the condo]." *Id.* The court found no bar in the statute for the benefits that accrued to the members, and, consistent with the reasoning in *Bethke,* we see none here.

¶ 34.   As the court of appeals observed when it decided the case before us, "even nonpublic-service-

oriented nonprofits receive nonprofit immunity under the statute. . . . *Bethke* specifically rejected the argument that a nonprofit must [] be charitable to claim the benefit of recreational immunity. In *Bethke* . . . the defendant was a condominium association, and its revenues were presumably used solely for the benefit of the few people who happened to live in the condominium development." *De La Trinidad,* No. 2007AP45, unpublished slip op., ¶ 14 (citations omitted).

¶ 35. Contrary to De La Trinidad's assertions, there is substantial evidence of Halter's being conducted as a nonprofit. Halter is recognized by the IRS as a § 501(c)(7) nonprofit organization;[17] documents from the IRS in the record confirm that Halter qualifies as a tax-exempt organization under the Internal Revenue Code. The record also contains Halter's 2002 IRS Form 990, Return of Organization Exempt from Income Tax, in which Halter identifies itself as a § 501(c)(7) organization. A letter from the IRS dated November 23, 1990, states that Halter's "organization continues to qualify for exemption from Federal income tax" under § 501(c)(7).

¶ 36. There is no indication in the record that Halter brings in revenues from outside of its membership though it could do so under IRS guidelines without forfeiting its nonprofit status.[18] The record includes

[17] The Internal Revenue Code exempts from taxation "[c]lubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder." I.R.C. § 501(c)(7) (2006).

[18] According to an official IRS publication, "A section 501(c)7 organization may receive up to 35% of its gross receipts, including investment income, from sources outside of its mem-

347

regulations from Halter that show that it requires all invoices to be paid by member checks. Deposition testimony in the record is clear that the attendees at the picnic giving rise to this action were not charged for the picnic; a Halter member, FPS of Kenosha, paid the invoice.

¶ 37.  A law review author described the standard controlling inquiry for nonprofits:

> The defining characteristic of a nonprofit corporation is that it is barred from distributing profits, or net earnings, to . . . its directors, officers or members. That does not mean that it is prohibited from earning a profit. Rather, it is only the distribution of those earnings as dividends that is prohibited.

Jane C. Schlicht, *Piercing the Nonprofit Corporate Veil,* 66 Marq. L. Rev. 134, 136 (1982) (internal quotations omitted).

¶ 38.  The record is replete with evidence that supports Halter's 27–year existence as a nonprofit. It would be an absurd result if we were to read the recreational immunity statute as making a for-profit organization out of an organization that throughout its existence has been governed by articles of incorporation that define it as a nonprofit, has been documented by state agencies as a nonprofit, and has been in compliance with IRS regulations as a nonprofit. Like the circuit court and court of appeals, we see no failure on Halter's part to meet the requirements necessary to be a nonprofit and thus to be entitled to immunity here.

bership without losing its tax-exempt status. Of the 35%, up to 15% of the gross receipts may be derived from the use of the club's facilities or services by the general public or from other activities not furthering social or recreational purposes for members." IRS Publication 557 at 49 (Rev. June 2008).

## IV. CONCLUSION

■■■

¶ 39.   The recreational immunity statute does not define nonprofits by referencing the chapter under which they were incorporated, either chapter 180 or 181, so that factor is not dispositive of the question. We see no basis in the statute for defining "profit" as broadly as De La Trinidad urges. Halter's articles of incorporation, tax returns, and financial statements make clear that it was organized and is conducted as a nonprofit organization, a fact recognized by both Wisconsin and the federal government. For these reasons, Halter is a nonprofit organization as defined by the statute and is thus entitled to immunity.

¶ 40.   We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.